957 So.2d 121 (2007)
In re JUSTICE OF THE PEACE Myrty ALFONSO.
No. 2007-O-0120.
Supreme Court of Louisiana.
May 22, 2007.
WEIMER, J.
This disciplinary proceeding was instituted by the Judiciary Commission of Louisiana (Commission) against Justice of the Peace Myrty Alfonso (JP Alfonso), District K, Parish of St. Bernard, State of Louisiana. A complaint was filed with the Office of Special Counsel (OSC) by a neighbor of JP Alfonso alleging that he had been wrongfully arrested pursuant to a warrant issued by her.

*122 FACTUAL AND PROCEDURAL BACKGROUND
In 1990, JP Alfonso assumed the office of justice of the peace and served a six-year term. After sitting out a term, she was elected again in 2002.
JP Alfonso stipulated to the facts which are not in dispute. On April 27, 2004, she issued a warrant for the arrest of Larry Thedens for DWI, contributing to the delinquency of a juvenile, disturbing the peace, and extortion. The arrest warrant was based upon complaints made by her neighbors, the Nunezes.[1] However, Thedens claimed the complaints failed to establish probable cause that he had committed the crimes for which the arrest warrant was issued. Following the arrest, bond was set by JP Alfonso at $50,000, allegedly an unreasonable amount considering the crimes for which Thedens had been arrested. Thedens was held in jail overnight before District Judge Manuel Fernandez reduced the bond to $5,000. In February 2005, the St. Bernard Parish District Attorney's office drafted a letter stating that, based upon the arrest warrant, there were insufficient facts to support the charges against Thedens.
In June 2004, Thedens filed a complaint against JP Alfonso with the OSC. She replied to the complaint and generally denied the allegations.
On November 10, 2005, the Commission filed Formal Charge 0260 against JP Alfonso, alleging she violated the Code of Judicial Conduct, particularly: Canon 1 providing that a judge shall uphold the integrity and independence of the judiciary; Canon 2A providing that a judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary; Canon 2 B providing that a judge shall not allow family, social, political, or other relationships to influence judicial conduct or judgment, nor shall a judge lend the prestige of the judicial office to advance the private interest of the judge or others; Canon 3 A(1) providing that a judge shall be faithful to the law and maintain professional competence in the law; Canon 3 A(3) providing that a judge shall be patient, dignified, and courteous to litigants and others with whom the judge deals in an official capacity; Canon 3 A(4) providing that a judge shall perform judicial duties without bias or prejudice; and Canon 3 C providing that a judge should disqualify herself in a proceeding in which the judge's impartiality might reasonably be questioned and shall disqualify herself in a proceeding in which disqualification is required by law or applicable Supreme Court rule.
The Commission further alleged that JP Alfonso engaged in willful misconduct relating to her official duty and engaged in persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, all in violation of LSA-Const. art. V, § 25(C).[2]
*123 On July 20, 2006, JP Alfonso and the OSC jointly filed a "Statement of Stipulated Uncontested Material Facts, Stipulated Conclusions of Law, and Stipulated Recommendation of Discipline." JP Alfonso stipulated that her judicial actions were the result of bias and prejudice against Thedens and bias in favor of her neighbors who complained about him. Thus, JP Alfonso admitted the facts as set forth above and that she violated the Code of Judicial Conduct as charged in the formal charge; however, she did not agree that she violated LSA-Const. art. V, § 25(C). Furthermore, the parties stipulated that JP Alfonso's conduct rose to the level of sanctionable ethical misconduct warranting a referral to this court by the Commission, and that the recommended sanction should be a public censure.
The stipulation between the parties also addresses a prior complaint involving JP Alfonso,[3] alleging that she was paid $80 for the filing of a lawsuit, but never contacted the complainant concerning the suit. The complainant further alleged that JP Alfonso would not return his telephone calls, nor would she refund the money paid. The complainant was told that the judgment had been rendered; however, he did not receive a copy of the judgment. In October 2004, File No. 03-3733 was closed and a letter of caution was issued to JP Alfonso by the Commission.
The Commission conducted a brief hearing on the Formal Charge 0260 on December 1, 2006. In response to the questions of Commission members, JP Alfonso pledged that she will not repeat the kind of judicial conduct that she engaged in with regard to Thedens. She testified that she will be unbiased in the future.

FINDINGS AND RECOMMENDATION OF THE COMMISSION
The Commission accepted JP Alfonso's stipulation that she violated the Code of Judicial Conduct as charged in the formal charge. The Commission also found that JP Alfonso violated LSA-Const. art. V, § 25(C), as charged.
The Commission noted this court has set forth a non-exclusive list of factors a court may consider in imposing discipline on a judge. In re: Chaisson, 549 So.2d 259 (La.1989), citing Matter of Deming, 108 Wash.2d 82, 736 P.2d 639, 659 (1987). This court specified the following considerations:
(a) whether the misconduct is an isolated instance or evidenced a pattern of conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his position to satisfy his personal desires.
Chaisson, 549 So.2d at 266.
In recommending discipline in the instant case, the Commission looked to the *124 Chaisson factors and made several conclusions. JP Alfonso's misconduct concerned one incident  the Nunez complaint about Thedens and his subsequent arrest due to her improper actions. Her misconduct occurred in the performance of her judicial duties. JP Alfonso entered into an extensive stipulation of facts, evidence, and conclusions of law regarding the Thedens case, and she committed to the Commission that in the future she would not take judicial action based upon her prior observations of an individual. Her testimony was that she would modify her behavior in the future. JP Alfonso first took the bench in December 1990. The arrest of Thedens, based upon an affidavit insufficient to support an arrest, occurred in April 2004. Accordingly, she was not new to the bench when the criticized conduct occurred. In fact, she had completed one full six-year term and was in the second year of another term at the time of the misconduct. There has been one prior complaint regarding JP Alfonso, which was closed by the Commission with a cautionary letter. In that matter she had been paid a filing fee, but had allegedly neglected the matter submitted. JP Alfonso's misconduct adversely affected the integrity and respect for the judiciary because she caused a person to be arrested and to suffer a night in jail without legal cause.[4] Anyone informed of all the facts could conclude that she wielded her judicial power irresponsibly, which negatively impacts the public's confidence in and respect for the judiciary. The Commission also found JP Alfonso may have intentionally exploited her position to satisfy personal desires. It was clear that the neighborhood issues involving Thedens included JP Alfonso's child. The specifics of the negative encounters between JP Alfonso and Thedens and regarding her child were not developed in the stipulated facts. Regardless, *125 it was clear from a review of the exhibits that the friction between Thedens and JP Alfonso was personal to the judicial officer, and she admitted her bias against him. Recusal was necessary, and she did not recuse.
The Commission recognized that as a constitutional fact-finding body, it is not a court, and it is not called upon or empowered by law to render legal judgments. With such caveat in mind, the Commission found the record demonstrates that JP Alfonso's actions were in violation of the Code of Judicial Conduct and the Louisiana Constitution of 1974. The Commission stated:
The Supreme Court of Louisiana has held, "the primary purpose of the Code of Judicial Conduct is to protect the public rather than to discipline a judge." In re Marullo, No. 96-2222, p. 4 (La.4/8/97); 692 So.2d 1019, 1023. The Commission considered the Statement of Stipulated Uncontested Material Facts, the stipulated exhibits, JP Alfonso's testimony at the hearing before the Commission, and the guiding decisions handed down by the Louisiana Supreme Court. In so doing, the Commission concluded that JP Alfonso's actions were so egregious that discipline more severe than a public censure was warranted. The Commission noted that JP Alfonso cooperated with the Office of Special Counsel and that the misconduct centered around only one set of circumstances. Nonetheless, the gravity of an unwarranted arrest, especially when the person responsible for the arrest admitted to her bias against the arrestee, indicates a recommendation of a short suspension from the bench, without pay, as the more appropriate level of discipline. [Emphasis supplied.]
Based on these considerations, the Commission recommended that JP Alfonso be suspended from office for fifteen days and that she be ordered to reimburse and pay to the Commission the amount of $178.41 in costs.

DISCUSSION
Article V, § 25(C) of the 1974 Louisiana Constitution provides the substantive grounds for disciplinary action against a judge.[5] The Code of Judicial Conduct adopted by this court under its supervisory authority supplements the constitution's substantive grounds for disciplinary action against a judge.[6] The Code is binding on all judges, including justices of the peace. In re: Wilkes, 403 So.2d 35, 40 (La.1981). Violations of the Canons contained in the Code of Judicial Conduct can serve as a basis for the disciplinary action provided for by Article V, § 25(C) of the Constitution. In re: McInnis, 00-1026, p. 1 (La.10/17/00), 769 So.2d 1186, 1188 n. 2. Furthermore, a justice of the peace is governed by the same constitutions and laws that govern all courts and judges of this state, and is bound to apply the law as written by the legislature and construed by the various courts. Wilkes, 403 So.2d at 44. That a justice of the peace is untrained in the law does not relieve a justice of the peace of the responsibility to follow the rule of law. Id.; see also, In re: Justice of Peace Cook, 05-0783, p. 5 (La.6/29/05), 906 So.2d 420, 424.
An act need not be intentional to support judicial discipline. In re: Hunter, 02-1975, p. 16 (La.8/19/02), 823 So.2d 325, 336, ("[A] judge may also, through negligence *126 or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute."). A lack of conscious intent can still support the imposition of judicial discipline. In re: Elloie, 05-1499, p. 30 (La.1/19/06), 921 So.2d 882, 902. Moreover, the fact that other judges or other circumstances may correct the erroneous or legally unsupportable judicial action does not absolve the respondent judge from the consequences of her wrongful acts. Id.
In the instant case, JP Alfonso has not only admitted to all the facts necessary to determine whether she violated the Code of Judicial Conduct, but has agreed to stipulations that her actions, indeed, violated the Code. Thus, our inquiry as to JP Alfonso's violations of these Canons is at an end,[7] and we are "left only with the task of deciding the appropriate measure of discipline in this case." In re: Decuir, 95-0056, p. 8, (La.5/22/95), 654 So.2d 687, 692.
As previously mentioned, this court has set forth a non-exclusive list of factors to consider in imposing discipline on a judge. In re: Chaisson, 549 So.2d at 266. In the instant case, the Commission specifically analyzed JP Alfonso's actions in the context of the Chaisson criteria. We have reviewed the record and agree with the Commission's factual findings, but find the recommended discipline  a fifteen-day suspension  is not commensurate with the seriousness of the violations.
Factors contributing to the seriousness of JP Alfonso's violation of the Code are that her misconduct occurred in her performance of her judicial duties; she was not new to her position as justice of the peace, having served one complete term prior to this violation; she had one prior complaint against her; her misconduct was willful, not negligent, in that she acted despite her bias toward the defendant; and her misconduct negatively impacted the public's confidence in and respect for the judiciary. Among the greatest dangers posed by a biased judge is a threat to liberty. After JP Alfonso inappropriately exercised her judicial authority, that threat was realized when Thedens was incarcerated overnight.
In mitigation, the charge against JP Alfonso involves only one incident and not a series of acts of misconduct. JP Alfonso entered into an extensive stipulation of facts, evidence, and conclusions of law regarding her case, and demonstrated cooperation with the Commission. Finally, her commitment to the Commission was that she would not take judicial action in the future based on bias against any individual. Apparently, the Commission was convinced she would not repeat the mistake made in this matter.
In light of JP Alfonso's willful actions, based on admitted bias, we find a suspension of thirty days without pay is a more appropriate sanction. See In re: Cresap, 06-1242 (La.10/17/06), 940 So.2d 624.

DECREE
For the reasons assigned, it is ordered that Justice of the Peace Myrty Alfonso be *127 suspended for 30 days without pay for violating the Code of Judicial Conduct and Article V, § 25(C) of the 1974 Louisiana Constitution in that she engaged in willful misconduct relating to her official duty. It is further ordered that Justice of the Peace Myrty Alfonso reimburse the Judicial Commission of Louisiana the sum of $178.41.
JOHNSON, J., dissents.
TRAYLOR, J., dissents.
WEIMER, J., additionally concurs with reasons.
WEIMER, J., additionally concurring.
I concurred in part and dissented in part in In re: Cresap, 06-1242 (La.10/17/06), 940 So.2d 624, believing that although a sanction was appropriate, the sanction imposed by the majority was too harsh. I believe this matter is more egregious because the bias and prejudice stipulated to by JP Alfonso was so obvious that she should have been aware that recusal was mandatory. As such, the same penalty imposed by the majority in In re: Cresap is justified in this matter.
NOTES
[1] JP Alfonso, the Nunezes, and Thedens all live on the same dead-end street in St. Bernard Parish. The Commission found a long-standing poor relationship existed between Thedens and his neighbors, including JP Alfonso. Thedens has repeatedly complained about the older children who live on the street (one of whom is JP Alfonso's son) riding dirt bikes and all-terrain vehicles at "excessive" speeds. Several times he has complained to the animal control department that the Nunezes' dog "strayed" onto his property and attacked his cats.
[2] LSA-Const. art. V § 25(C), provides:

On recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, conduct while in office which would constitute a felony, or conviction of a felony.
[3] See Supreme Court Rule XXIII, § 3(d), which provides: "Closed files of prior proceedings against a judge may be referred to by the Commission at any stage of the current proceedings."
[4] The Findings of Fact and Conclusions of Fact and Law and Recommendation of Discipline rendered by the Commission in this matter pursuant to the directive of Section 11 of Supreme Court Rule XXIII specifically notes that the:

affidavit upon which Justice of the Peace Alfonso based her determination that probable cause existed to believe Mr. Thedens had committed the above crimes stated that Mr. Thedens had committed the crimes on: "the 1st-30th day of every month for 2-4 years, 2002-2004." This statement, even without the other stipulated circumstances of which Justice of the Peace Alfonso was aware, was sufficient to place Justice of the Peace Alfonso on notice that probable cause did not exist to believe Mr. Thedens had committed these offenses.
The affidavit submitted in support of the arrest warrant contains an obvious exaggeration related to the criminal activities being committed daily for two to four years. However, the affidavit by Nunez specifically provides the following additional information concerning the allegations of criminal activity on the part of Thedens:
Larry Thedens on many occa[sions] has driven down Nicosia Place drunk, speeding and stops his car to curse the children who live there on Nicosia Place[.] He (Larry Thedens) has threaten [sic] to kill Mr. Nunez's dog. Larry Thedens call[s] the animal control and lies to them about dog being out of his pen. Also calls the police with false statement [sic] about all the children and resident [sic] on Nicosia Place.
Thus, the affidavit as a whole contains a recitation of facts which could establish probable cause of criminal activity. Nevertheless, the obvious exaggeration related to the criminal activities being committed daily for two to four years should have put the justice of the peace on notice to more carefully evaluate the affidavit.
The Commission found that the exaggeration was sufficient to place JP Alfonso on notice that probable cause did not exist to believe Thedens committed the offenses alleged. However, we believe this matter is subsumed into the charge related to the fact JP Alfonso acted in this matter with bias and prejudice toward Thedens when she should have recused herself.
[5] See footnote 2, supra.
[6] As previously mentioned, the Commission's Formal Charge 0260 against JP Alfonso alleges violations of Canons 1, 2 A, 2 B, 3 A(1), 3 A(3), 3 A(4), and 3 C.
[7] Although we agree with the Commission that JP Alfonso violated the constitution, we note that she refused to stipulate to such a violation. However, this refusal on her part is immaterial; any violation of the Code of Judicial Conduct may serve as grounds for sanctions. In re: King, 03-1412, p. 18 (La.10/21/03), 857 So.2d 432, 445.

Further, the Commission noted that "[a]s JP Alfonso stipulated to her violation of the Code[,] it was not necessary to determine whether this case was an instance of mere judicial error and whether that error rose to the level of ethical misconduct. Considering th[at] JP Alfonso further stipulated that she acted out of bias against Mr. Thedens, it would not appear she acted in simple error."