959 So.2d 474 (2007)
In re Justice of the Peace Roger ADAMS, Sr.
No. 2007-O-426.
Supreme Court of Louisiana.
June 29, 2007.
*475 Office of Special Counsel, Steven Robert Scheckman, Special Counsel, Bret Edward Emmanuel, Robert E. McKnight, Jr., Assistant Special Counsel, for applicant.
Justice of the Peace Roger Adams, Sr., for respondent.
Nancy E. Rix, Commission Counsel.
KIMBALL, J.[*]
This matter comes before the court on the recommendation of the Judiciary Commission of Louisiana (the Judiciary Commission) that Justice of the Peace Roger Adams, Sr. of Ward 7, Parish of Avoyelles, State of Louisiana, be suspended without pay for five days, fully deferred, subject to a one-year period of probation, and be ordered to reimburse and pay the Judiciary Commission the amount of $52.50 in costs. After a thorough review of the record, we find Justice of the Peace Adams' conduct violated Canons 2 A and 2 B of the Code of Judicial Conduct. Accordingly, we order Justice of the Peace Adams be suspended without pay for fifteen days and ordered to reimburse and pay the Judiciary Commission the amount of $52.50 in costs.

FACTS AND PROCEDURAL HISTORY
Justice of the Peace Adams was first elected to the Justice of the Peace Court *476 for the Parish of Avoyelles in 2003 and has served in this position continuously since then. On March 6, 2003, Justice of the Peace Adams issued warrants for the arrests of Mark Dupont and John Hebert and set their bond amounts at $50,000 each. He issued the warrants based on an affidavit submitted to him by James Fontenot, the Mayor of Simmesport, which alleged Mr. Dupont and Mr. Hebert had violated La. R.S. 14:326.[1]
Mr. Dupont and Mr. Hebert had attempted to enter a float in the Simmesport Mardi Gras parade. Their float had signs posted on it that were critical of Mayor Fontenot, stating: "Recall Boo" and "No More Boo." "Boo" is Mayor Fontenot's nickname. Justice of the Peace Adams' issuance of the warrant with the $50,000 bond resulted in Mr. Dupont's and Mr. Hebert's being arrested and jailed for over twenty-four hours. Mr. Dupont and Mr. Hebert were finally able to obtain their release after they appeared before Judge Mark Jeansonne who reduced the bond amounts to $2,500.
Justice of the Peace Adams' actions resulted in a newspaper story published in The Town Talk on Sunday, March 16, 2003. The remarks by Justice of the Peace Adams in that article make it clear he set Mr. Dupont's and Mr. Hebert's bonds at $50,000 based on incidents other than allegations contained in the charging *477 affidavits of Mayor Fontenot. The remarks indicate Justice of the Peace Adams set Mr. Dupont's and Mr. Hebert's bonds as high as he did to retaliate against them for being critical of Mayor Fontenot. The article stated, "Adams agrees with Fontenot. He set the bail bonds at $50,000 because the arrests were `not due to just one incident.'" It further stated, "The anti-Fontenot forces `have plastered signs all over town,' Adams said, `and made obscene remarks about the mayor.'"
On September 11, 2003, Mr. Dupont filed a complaint against Justice of the Peace Adams with the Office of Special Counsel. The Office of Special Counsel wrote to Justice of the Peace Adams on September 18, 2003, and asked him to respond to the allegations contained in the complaint. On October 6, 2003, the Office of Special Counsel received a letter from Justice of the Peace Adams with an attached town ordinance relative to the rules for parades. The Judiciary Commission authorized a full investigation on February 13, 2004, and Justice of the Peace Adams was notified of the investigation. On December 12, 2005, the Judiciary Commission filed Formal Charge 0264 concerning Justice of the Peace Adams, alleging he violated Canons 2 A[2] and 2 B[3] of the Code of Judicial Conduct. The Judiciary Commission further alleged that respondent engaged in willful misconduct relating to his official duty and engaged in persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, all in violation of La. Const. art. V, § 25(C).
On August 29, 2006, Justice of the Peace Adams and the Office of Special Counsel jointly filed a "Statement of Stipulated Uncontested Material Facts, Stipulated Conclusions of Law, and Stipulated Recommendation of Discipline." In addition to stipulating to the above facts, the parties stipulated Justice of the Peace Adams acted inappropriately when he issued the warrants of arrest for Mr. Dupont and Mr. Hebert and set an unreasonably high bond. In addition, the parties stipulated he violated Canons 2 A and 2 B of the Code of Judicial Conduct. The parties stipulated he violated Canon 2 B because he posted Mr. Dupont's and Mr. Hebert's bonds as high as he did to retaliate against them for being critical of Mayor Fontenot. The parties stipulated Justice of the Peace Adams therefore allowed his political relationship to influence his judicial conduct or judgment and lent the prestige of his judicial office to advance the private interest of Mayor Fontenot. Justice of the Peace Adams and the Office of Special Counsel further stipulated he thereby also violated Canon 2 A by failing to "act at all times in a manner so as to promote public confidence in the integrity and impartiality of the judiciary."
The Judiciary Commission conducted a brief hearing on the Formal Charge on January 17, 2007. Justice of the Peace Adams apologized for his actions toward Mr. Dupont and Mr. Hebert and pledged he would not repeat such conduct in the future.
The Judiciary Commission accepted the stipulation that Justice of the Peace Adams violated the Canons 2A and 2B of *478 the Code of Judicial Conduct as charged in the formal charge. The Judiciary Commission also concluded Justice of the Peace Adams violated La. Const. art. V, § 25(C) because his conduct was persistent and public and it was prejudicial to the administration of justice and brought the judicial office into disrepute. Moreover, the Judiciary Commission concluded Justice of the Peace Adams' conduct was not the result of mere legal error. According to the Judiciary Commission, "Adams' admission that he acted because he got caught in a political fight and for the purpose of retaliation takes the case outside of a `mere error' analysis." The Judiciary Commission concluded:
The fact that he relied not only upon the instant offense, but also upon his knowledge or belief as to other bad acts of Mr. Hebert and Mr. Dupont, might have been considered as mere error that did not rise to the level of ethical misconduct, but such an inquiry was rendered unnecessary as the result of his other admissions.
Based on these conclusions, the Judiciary Commission recommended that Justice of the Peace Adams be suspended without pay for five days, fully deferred, subject to a one-year period of probation and that he be ordered to reimburse and pay to the Judiciary Commission the amount of $52.50 in costs.

LAW AND DISCUSSION
This court is vested with exclusive original jurisdiction in judicial disciplinary proceedings by La. Const. art. V, § 25(C), which provides:
On recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, conduct while in office which would constitute a felony, or conviction of a felony. On recommendation of the judiciary commission, the supreme court may disqualify a judge from exercising any judicial function, without loss of salary, during pendency of proceedings in the supreme court. On recommendation of the judiciary commission, the supreme court may retire involuntarily a judge for disability that seriously interferes with the performance of his duties and that is or is likely to become permanent. The supreme court shall make rules implementing this Section and providing for confidentiality and privilege of commission proceedings.
This Court, pursuant to its supervisory authority over all lower courts, adopted the Code of Judicial Conduct, effective January 1, 1976, and amended July 8, 1996. The Code is binding on all judges, including justices of the peace. In re Justice of the Peace Cook, 05-783, p. 5 (La.6/29/05), 906 So.2d 420, 424; In re Wilkes, 403 So.2d 35, 40 (La.1981). Violations of the Canons contained therein, without more, may serve as a basis for the disciplinary action provided for by La. Const. art. V, § 25(C). In re King, 03-1412, p. 18 (La.10/21/03), 857 So.2d 432, 445; In re McInnis, 00-1026, p. 1 n. 2 (La.10/17/00), 769 So.2d 1186, 1188 n. 2. Furthermore, a justice of the peace is governed by the same constitutions and laws that govern all courts and judges of this state, and is bound to apply the law as written by the legislature and construed by the various courts. In re Justice of the Peace Cook, 05-783 at p. 5, 906 So.2d at 424; In re Wilkes, 403 So.2d at 44. That he is a layman untrained in the law does *479 not relieve him of his responsibility to follow the rule of law. Id.
The charge or charges against a judge must be proven by clear and convincing evidence before this court can impose discipline. In re Bowers, 98-1735 at p. 7, 721 So.2d at 880; In re Johnson, 96-1866, p. 7 (La.11/25/96), 683 So.2d 1196, 1199; In re Huckaby, 95-0041, p. 6 (La.5/22/95), 656 So.2d 292, 296. This standard requires that the level of proof supporting the charge or charges against a judge must be more than a mere preponderance of the evidence, but less than beyond a reasonable doubt. In re Bowers, 98-1735 at p. 7, 721 So.2d at 880; In re Quirk, 97-1143 at p. 4, 705 So.2d at 176; In re Huckaby, 95-0041 at p. 6, 656 So.2d at 296.
In the instant case, Justice of the Peace Adams has stipulated to the facts and to the violation of Canons 2 A and 2 B of the Code of Judicial Conduct. As Justice of the Peace Adams concedes violation of the Code, the sole remaining issue for this court is the appropriate discipline for his violations of Canons 2 A and 2 B. In re Ellender, 04-2123, p. 10 (La.12/13/04), 889 So.2d 225, 232.
In determining the appropriate measure of discipline, this court has set forth the following non-exclusive list of factors to consider in imposing discipline on a judge:
(a) whether the misconduct is an isolated instance or evidenced a pattern of conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his position to satisfy his personal desires.
In re Chaisson, 549 So.2d 259, 266 (La. 1989).
In evaluating factors (a) and (b), the Judiciary Commission noted the misconduct affected two individuals who had engaged in one incident. However, the Judiciary Commission pointed out that Justice of the Peace Adams issued warrants for their arrests and then issued excessive bonds, admittedly in retaliation for their political opposition to the Mayor of Simmesport. In addition, under factors (c) and (d), the Judiciary Commission noted that Justice of the Peace Adams' misconduct occurred in performance of his judicial duties. Under factor (i), the Judiciary Commission concluded that the misconduct adversely affected the integrity and respect of the judiciary because he caused two persons to be arrested and incarcerated approximately 24 hours in jail due to the Justice of the Peace's retaliation for political reasons. The Judiciary Commission suggested Justice of the Peace Adams wielded his power irresponsibly, which negatively impacts the public's confidence in and respect for the judiciary.
The Judiciary Commission concluded that factors (e) through (h) are mitigating Chaisson factors which militate in favor of a lesser sanction. Justice of the Peace Adams entered into a stipulation of facts, evidence and conclusions of law, and acknowledged his behavior. He further testified that he would modify his behavior in the future. Justice of the Peace Adams took the bench in 2003, and the misconduct at issue occurred in March 2003. Therefore, *480 he was a brand new judicial officer when the criticized conduct occurred. Moreover, there have been no prior complaints regarding Justice of the Peace Adams' ethical conduct. In evaluating factor (j), the Judiciary Commission stated it believed Justice of the Peace Adams did not intentionally exploit his position to satisfy personal desires. The Judiciary Commission found him credible when he stated he was in the middle of a political dispute and acted for political reasons. Considering these factors, the Judiciary Commission recommended Justice of the Peace Adams be suspended for five days, but with such suspension fully deferred, subject to a one-year period of probation and be ordered to pay $52.50 in costs.
We have reviewed the record and agree with the Judiciary Commission's factual findings, but find the recommended discipline is not commensurate with the seriousness of the violation. We note that Justice of the Peace Adams' actions in setting excessive bonds of $50,000 for Mr. Dupont and Mr. Hebert resulted in two members of the public being arrested and incarcerated for over twenty-four hours for a permit violation for a Mardi Gras parade float. Not only did this misconduct occur in performance of his judicial duties, but the deprivation of liberty suffered by Mr. Dupont and Mr. Hebert caused a seriously adverse effect on the integrity and respect of the judiciary.
Recently, in In re Justice of the Peace Alfonso, 07-120, p. 9 (La.5/22/07), 957 So.2d 121, this court suspended a justice of the peace for thirty days for wrongfully issuing a warrant and setting an excessive bond of $50,000, which resulted in a person being arrested and incarcerated overnight without legal cause. Justice of the Peace Alfonso, however, unlike Justice of the Peace Adams, was not new to her position as justice of the peace, having served one complete term prior to this violation. Moreover, Justice of the Peace Alfonso had one prior complaint against her, while Justice of the Peace Adams has had no prior complaints.
In evaluating Justice of the Peace Adams' motivations, we agree with the Judiciary Commission that his actions fell outside the realm of mere legal error, as he admitted he was caught in a political fight and acted for the purpose of retaliation. While Justice of the Peace Adams acted for political reasons, Justice of the Peace Alfonso exploited her position to satisfy personal desires. Neither are acceptable motivation for judicial action. We find an appropriate discipline for Justice of the Peace Adams is a suspension of fifteen days without pay. We additionally order Justice of the Peace Adams to reimburse and pay the Judiciary Commission the amount of $52.50 in costs.

DECREE
For the aforementioned reasons, this court finds Justice of the Peace Adams' conduct violated Canons 2 A and 2 B of the Code of Judicial Conduct. Accordingly, we order Justice of the Peace Adams be suspended without pay for fifteen days and ordered to reimburse and pay the Judiciary Commission the amount of $52.50 in costs.
JOHNSON, J., dissents and assigns reasons:
There is no rational basis for distinguishing this case from our recent decision in In re Justice of the Peace Alfonso, 07-120 (La. 5/22/07), 957 So.2d 121.
In the Alfonso case, Justice of the Peace Alfonso admitted that she issued an arrest warrant without probable cause and set the detainee's bond at $50,000, which was an unreasonable amount considering the crime which was charged. Similarly, Justice *481 of the Peace Adams stipulated that he issued arrest warrants and set the two defendants' bonds at $50,000 each, which obviously was excessive when we consider that District Judge Jeansonne reduced the bonds to $2,500 each. In Alfonso, the respondent admitted that she acted in retaliation for personal reasons. Here, the respondent admitted he issued the arrest warrants for political reasons. In both cases, the misconduct occurred in the performance of their judicial duties, and negatively impacted the public's confidence in and respect for the judiciary. Since the case sub judice is so similar to the Alfonso case, Justice of the Peace Adams should be suspended for thirty days.
NOTES
[*] Retired Judge Moon Landrieu, assigned as Associate Justice Ad Hoc for Associate Justice Jeannette Theriot Knoll, recused.
[1] La. R.S. 14:326 provides:

A. Any procession, march, parade or public demonstration of any kind or for whatever purpose is prohibited by any group, association or organization on any public sidewalk, street, highway, bridge, alley, road or other public passageway of any municipality or unincorporated town or village unless there first has been obtained a permit therefor, and in all cases the person or persons or the group, association or organization to whom the permit is issued shall be liable for all damage to property or persons which may arise out of or in connection with any such procession, march, parade or public demonstration for which a permit is issued.
B. Application for the permit required herein shall be made to the mayor and governing authority of the municipality or to the governing authority of the parish in which the unincorporated town or village in which the procession, march, parade or public demonstration is located, as the case may be. Permits may be granted by the authority to which application is made, provided, however, that bond in the amount of ten thousand dollars has first been filed with the mayor and municipal governing authority or with parish governing authority, as the case may be, as security for the payment of any damage or injury which may occur as the result of or in connection with such procession, march, parade or public demonstration.
C. The provisions of this Section shall apply to all groups, associations, or organizations regardless of race, creed, disability, as defined in La. R.S. 51:2232(11), color, or political beliefs of its members; however, nothing contained herein shall apply to a bona fide legitimate labor organization or professional firefighter or police association or to any lawful activity of a labor union permitted by law, nor shall these provisions apply to any procession or parade directly held or sponsored by the governing authority of any municipality or the governing authority of any parish, nor shall these provisions apply to any procession, march, or parade directly held or sponsored by a bona fide organization specifically for the celebration of Mardi Gras and/or directly related prelenten or carnival festivities, school parades or other functions, parish parades or other functions, state, parish, or municipal fairs or other such related activities. However, the provisions of this Section shall apply only to parishes with a population of more than four hundred fifty thousand.
D. Whoever violates any provision of this Section shall be guilty of a misdemeanor and upon conviction shall, for each offense, be fined not more than one thousand dollars or be imprisoned for not more than six months, or both.
[2] Code of Judicial Conduct Canon 2 A states, "A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."
[3] Code of Judicial Conduct Canon 2 B states, in pertinent part, "A judge shall not lend the prestige of judicial office to advance the private interest of the judge or others; nor shall a judge convey or permit others to convey the impression that they are in a special position to influence the judge."