995 So.2d 1197 (2008)
In re Justice Of The Peace Larry Charles FREEMAN.
No. 2008-O-1820.
Supreme Court of Louisiana.
December 2, 2008.
*1199 Office of Special Counsel, Byron Craig Williams, Special Counsel, Michael Bewers, Nicole Montagnet Smith, Office of Special Counsel, for applicant.
Larry Charles Freeman, for respondent.
Nancy E. Rix, Commission Counsel.
KIMBALL, Justice.
This matter comes before the court on the recommendation of the Judiciary Commission of Louisiana ("Commission") that Justice of the Peace Larry Charles Freeman of Ward 5, Parish of St. Helena, State of Louisiana, be removed from office, and be ordered to pay costs for his failure to resign his office as justice of the peace when he became a candidate for the non-judicial office of police juror in violation of the Code of Judicial Conduct and the Louisiana Constitution. After a thorough review of the record, we find the charge against Justice of the Peace Freeman is supported by clear and convincing evidence and that his conduct violated Canons 2(A) and 7(I)of the Code of Judicial Conduct and Article V, § 25(C) of the Louisiana Constitution. In reaching this conclusion, we find certain provisions of La. R.S. 42:39, which conflict with Canon 7(I) of the Code of Judicial Conduct, unenforceable. Disagreeing with the Commission's recommendation that Justice of the Peace Freeman's actions warrant removal from office, we find Justice of the Peace Freeman should be suspended without pay for the remainder of his term and ordered to reimburse and pay the Commission the amount of $458.50 in costs.

Facts and Procedural History
Larry Charles Freeman assumed the office of Justice of the Peace, Ward 5, Parish of St. Helena, on January 1, 2003. He has *1200 held that position continuously since that time. While serving as a justice of the peace, he qualified to run in the October 20, 2007, election for the office of Police Juror, 5th District, St. Helena Parish. At no time prior to or after qualifying to run for the non-judicial office of police juror did Justice of the Peace Freeman resign his position as justice of the peace. Justice of the Peace Freeman ultimately failed to prevail in the October 20, 2007, election.
On September 12, 2007, the Office of Special Counsel received a complaint signed by an anonymous "concerned citizen" questioning whether respondent was "above the law" in running for a non-judicial office while still holding his judicial office.[1] Attached to the complaint were three photographs showing campaign signs advertising Justice of the Peace Freeman's candidacy for the seat on the police jury. By letter dated September 18, 2007, the Office of Special Counsel sent Justice of the Peace Freeman a copy of the complaint against him and invited him to submit a letter of response by October 9, 2007. After his receipt of the initial notice about the complaint, Justice of the Peace Freeman contacted the Office of Special Counsel and requested additional time to respond, which was granted. On November 19, 2007, Justice of the Peace Freeman provided a response to the complaint in which he admitted that he had been a candidate for the office of police juror in the October election, but stated that if this action violated the Code of Judicial Conduct, he "was not aware of any violation."
On January 23, 2008, Formal Charge 0292 was filed against Justice of the Peace Freeman alleging that his conduct in running for the non-judicial office of police juror without resigning his position as justice of the peace violated Canons 1,[2] 2,[3] and 7(I)[4] of the Code of Judicial Conduct. The Commission further alleged that Justice of the Peace Freeman engaged in willful misconduct relating to his official duty and/or engaged in persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, in violation of La. *1201 Const. art. V, § 25(C).[5] Justice of the Peace Freeman answered the Formal Charge and admitted that he was a candidate for the office of police juror and that he did not resign his office as justice of the peace; however, he denied that by so doing he engaged in willful misconduct relating to his official duty or engaged in persistent and public conduct prejudicial to the administration of justice.
Thereafter, a hearing officer was appointed to conduct proceedings pursuant to Supreme Court Rule XXIII, § 29. A hearing was held on March 17, 2008, wherein Justice of the Peace Freeman, who was unrepresented by counsel, testified that he has held the judicial office of Justice of the Peace since January 1, 2003, and that he had qualified as a candidate for the non-judicial office of police juror in 2007. He further acknowledged that he actively campaigned for the office of police juror by posting signs announcing his candidacy. Justice of the Peace Freeman also identified a signed[6] Candidate's Report dated October 10, 2007, that listed him as a candidate for the police jury and reported expenditures of $1665.00 for campaign signs, T-shirts, and cards. Justice of the Peace Freeman testified that he did not win the primary election, but that if he had, he would have resigned his position as Justice of the Peace.
Justice of the Peace Freeman was then questioned about his knowledge of "a rule that required justices of the peace or judges to resign, Rule 7I of the Code of Judicial Responsibility." He replied, "I didn't understand it." The following testimony was elicited from Justice of the Peace Freeman by the Assistant Special Counsel:
A. The Attorney General, they didn't even much have a clear understanding of it, the people that advised me. That's where I get my advisement [sic] from.
Q. ... You said, I think, several times in your opening statement and you've said in your answer to this charge that you conferred with members of the Attorney General's office
A. Yes.
Q. or that'swas that at the justice of the peace conference
A. Yes.
Q. that was held
A. I didn't confer with them. It came up inwhile we was doing our conference.
Q. It was a topic that was discussed?
A. It was a topic that was discussed, because other peoples [sic] was in there and wanted to run and they just wanted to have a clear understanding of it.
Q. And you were told at that time it was unclear, they didn't know but they would get back to you?
A. Yeah, they wasn't quite clear. You know, they said they had to get with the Supreme Court. They said, you know

*1202 Q. Okay. So I thought I heard you say this morning it was clear to you that you could run.
A. Yeah.
Q. Well, then
A. From my understanding.
Q. Well, if they never got back to you, how could it have been clear to you to run?[[7]]
A. How could it be clear to me to run? I mean, they didn'tthey didn't never say anything else to me.
Q. So you took their silence and the fact that they never got back to you as, yes, it was okay to run?
A. Well, I talked to another attorney. He told me it was okay for me to run.
Q. Who was this attorney?
A. I'm notrather not call any names. He was also a state representative. He told me that I could run, so I figured he knew. But that's not the ground that I'm standing on. I'm not standing on the ground. But somebody did advise me, which he is an attorney.
Q. Okay. So if hesince he advised you of that, if that's incorrect, then that wasyou're saying that was what an attorney
A. Yeah, I didn't pay him for this information.[[8]]
Q. Okay. Did you ever check with the Louisiana Supreme Court?
A. I didn't check with anybody. The only peoples [sic] that I checked with were an attorney I just had mentioned and when I was in the conference, they told me they wasn't clear.
Q. Did you ever
A. They didn't have a clear-cut understanding. They said we need to confirm with the Louisiana Supreme Court of Justices and we will get back with all of you-all.
Q. But they never did?
A. Notnot from my knowledge.[[9]]
Justice of the Peace Freeman further testified that at the conference "they" asked whether there was a "loophole" such that if it never got reported, nothing would have been done to them.
Justice of the Peace Freeman indicated his education consisted of completing high school. He further testified that after he was elected Justice of the Peace, he received training by the Attorney General's office. His training included references to the Code of Judicial Conduct, but it was not exhaustively covered during the training. Justice of the Peace Freeman stated he was never told in his training that a judge shall resign his or her office when the judge becomes a candidate for a nonjudicial office. Justice of the Peace Freeman *1203 acknowledged that he now understands that he cannot run for a non-judicial office while holding the office of justice of the peace. Additionally, he stated that no charges other than the charge at issue have ever been filed against him.
Following the hearing, the hearing officer filed a report with the Commission containing proposed findings of fact and conclusions of law on May 8, 2008. The hearing officer's findings of fact were consistent with the largely undisputed testimony recounted above. The hearing officer specifically determined that the testimony of Justice of the Peace Freeman was "genuinely credible." The hearing officer concluded that Justice of the Peace Freeman violated the provisions of Canon 7(I) of the Code of Judicial Conduct, but did not violate the provisions of La. R.S. 42:39, which purports to exempts justices of the peace from the prohibition against judges qualifying as candidates for non-judicial elective offices. The hearing officer concluded that the provision of the Canon controlled, and that Justice of the Peace Freeman's actions had violated Canons 7(I)and 2(A), but not Canon 1.
Following receipt of the hearing officer's proposed findings of fact and conclusions of law, the Commission established a briefing schedule, as required by Rule XXIII, § 29, and ordered Justice of the Peace Freeman to appear before the Commission on June 20, 2008, to answer questions and to make any statement he desired regarding the Formal Charge and the hearing officer's findings and conclusions.
At the hearing before the Commission, Justice of the Peace Freeman was again unrepresented by counsel. He indicated that he had read the hearing officer's proposed findings of fact and conclusions of law and did not object to them or have anything to add to them. Justice of the Peace Freeman clarified he did not personally ask about whether he was required to resign to run for a non-judicial office at the training conference. Rather, other people asked and were told that the answer was unclear and those conducting the training would have to get back to them with the answer at a later date. Justice of the Peace Freeman further stated that when he decided to run for the office of police juror, one of his friends discussed the necessity of resigning to run with a state representative, who was also a local attorney, who reportedly said the justice of the peace did not have to resign. Justice of the Peace Freeman testified at that point he "didn't even worry about it anymore." Justice of the Peace Freeman stated that he did not call the Attorney General's office to ask whether an answer had been received by them regarding whether a justice of the peace had to resign before becoming a candidate for a non-judicial office prior to qualifying as a candidate for the police jury. Justice of the Peace Freeman stated the following when asked whether, at the time he qualified as a candidate for the police jury, he knew should not run for a non-judicial office while holding the office of justice of the peace:
I knew I couldn't hold an officea dual office system, but I didn't understand and know that I could not run. I didn't know I had to resign before I ran for office, which I have a clear understanding now....
Further, Justice of the Peace Freeman testified that he did not resign his position as a justice of the peace or withdraw his candidacy for the office of police juror when he received the complaint from the Office of Special Counsel because he was "planning on winning" the police juror election and was going to resign his position of justice of the peace anyway.
*1204 Following the hearing, the Commission deliberated and adopted the facts found by the hearing officer. The Commission found several additional facts based on Justice of the Peace Freeman's testimony during the June 20, 2008, hearing. The Commission also adopted the hearing officer's conclusions of law. Furthermore, it concluded that Justice of the Peace Freeman made a deliberate decision not to seek a definitive resolution of the ambiguity between the statute and the ethical canon so that he could run for the office of police juror without being required to resign his position as justice of the peace. The Commission agreed with the hearing officer that by running for a non-judicial office and retaining the office of justice of the peace, respondent violated Canon 7(I) of the Code of Judicial Conduct. The Commission further agreed with the hearing officer that by failing to comply with the law, respondent violated Canon 2(A). The hearing officer found, and the Commission agreed, that there was no evidence presented at the hearing that respondent violated Canon 1 of the Code of Judicial Conduct. With respect to the alleged violations of the Louisiana Constitution, the Commission agreed that respondent's conduct brought his judicial office into disrepute in violation of La. Const. art. V, § 25(C). Consequently, the Commission recommended that Justice of the Peace Freeman be removed from office and ordered to pay $458.50 in hard costs.

Law and Discussion
Article V, § 25(C) of the 1974 Louisiana Constitution vests this court with exclusive original jurisdiction in judicial disciplinary proceedings and provides the substantive grounds for disciplinary action against a judge.[10] This court, pursuant to its supervisory authority over all lower courts, adopted the Code of Judicial Conduct, which became effective January 1, 1976. In re: Adams, 07-0426, p. 6 (La.6/29/07), 959 So.2d 474, 478. The Code of Judicial Conduct supplements the constitution's substantive grounds for disciplinary action against a judge. In re: Franklin, 07-1425, p. 14 (La.11/27/07), 969 So.2d 591, 599. Violations of the Canons contained therein, without more, may serve as a basis for the disciplinary action provided for by La. Const. art. V, § 25(C). Adams at p. 6, 959 So.2d at 478; In re: King, 03-1412, p. 18 (La.10/21/03), 857 So.2d 432, 445.
An act complained of need not be intentional to support judicial discipline. In re: Alfonso, 07-0120, p. 7 (La.5/22/07), 957 So.2d 121, 125 (citing In re: Hunter, 02-1975, p. 16 (La.8/19/02), 823 So.2d 325, 336 ("[A] judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the *1205 judicial office into disrepute.")). A judge's lack of conscious intent will not thwart the imposition of judicial discipline. Alfonso at p. 8, 957 So.2d at 126; In re: Elloie, 05-1499, p. 30 (La.1/19/06), 921 So.2d 882, 902.
The charge against a judge must be proved by clear and convincing evidence before this court can impose discipline. Franklin at p. 14, 969 So.2d at 600; Adams at p. 6, 959 So.2d at 479. In determining whether this standard has been met, this court has the power to make determinations of fact based on the evidence contained in the record and is not bound by, nor required to give any weight to, the findings and recommendations of the Commission. King at p. 17, 857 So.2d at 445.
An unnumbered section of the Code entitled "Compliance with the Code of Judicial Conduct" provides that anyone who is a justice of the peace is a judge for the purpose of the Code, and that all judges shall comply with the Code. Thus, the Code is binding on all judges, including justices of the peace. Franklin at p. 14, 969 So.2d at 599; In re: Cook, 05-0783, p. 5 (La.6/29/05), 906 So.2d 420, 424; In re: Wilkes, 403 So.2d 35, 40 (La.1981). Canon 7(I) provides that a judge shall resign his office when he becomes a candidate for a non-judicial office. Justice of the Peace Freeman admitted, and the record clearly shows, that he did not resign his office as justice of the peace when he became a candidate for the non-judicial office of police juror. Justice of the Peace Freeman's failure to resign his judicial office when he became a candidate for the non-judicial office of police juror was a plain violation of Canon 7(I).
Notwithstanding the fact that the Code of Judicial Conduct clearly mandates the resignation of a judge when he becomes a candidate for a non-judicial office, there apparently exists some confusion over whether justices of the peace must resign in this situation because of the existence of La. R.S. 42:39, a legislative enactment which purports to except justices of the peace from a similar statutory rule. La. R.S. 42:39, which was enacted in 1968, provides that no judge of any court, justices of the peace excepted, shall be eligible to become a candidate for any elective office other than that of judge. The statute goes on to provide that a judge may resign his office to become a candidate for a non-judicial elective office within a specified time frame. Finally, the statute provides that if any judge, justices of the peace excepted, qualifies for any elective position without complying with the statutory provisions, his qualification as a candidate for the other office shall be null and void.[11]
*1206 The exception for justices of the peace provided in La. R.S. 42:39 conflicts with the mandate in Canon 7(I) that all judges, including justices of the peace, shall resign their judicial offices when they become candidates for non-judicial offices. Therefore, we must determine whether justices of the peace who wish to become candidates for non-judicial offices are governed exclusively by the provisions of Canon 7(I) or whether the statutory exception of La. R.S. 42:39 has any impact in this situation.
The Code of Judicial Conduct was enacted by this court pursuant to its constitutionally-granted supervisory authority over all lower courts. This constitutional grant of supervisory authority is plenary, unfettered by jurisdictional requirements, and exercisable at the complete discretion of the court. La. Const. art. V, § 5(A); Unwired Telecom v. Parish of Calcasieu, 03-0732, p. 8 (La.1/19/05), 903 So.2d 392, 400 (on reh'g). As explained above, the Code requires all judges, including justices of the peace, to comply with its requirements. Additionally, in La. R.S. 42:1167, the legislature has recognized that all judges, as defined by the Code of Judicial Conduct, shall be governed exclusively by that Code.[12] This statute, which became effective April 1, 1980, acknowledges this court's authority to provide the exclusive means by which judges' conduct is governed. See In re: Ellender, 04-2123, p. 6 (La. 12/13/04), 889 So.2d 225, 230 ("The legislative statement in La. R.S. 42:1167 codifies our jurisprudence which provides that judges are governed exclusively by the Code, and the Code is not contrary to the Constitution's exclusive grant of authority to this Court in the realm of judicial misconduct.").[13]
The provisions of La. R.S. 42:39 were enacted prior to this court's adoption of the Code and prior to the legislature's recognition in La. R.S. 42:1167 that judges, as defined by the Code, shall be governed exclusively by the Code. While La. R.S. 42:39 was perhaps useful at one time, its exception for justices of the peace is now directly in conflict with La. R.S. 42:1167 and Canon 7(I) of the Code. The reasons for the requirement in Canon 7(I) that judges must resign before becoming candidates for non-judicial offices were clearly expressed by the U.S. Fifth Circuit Court of Appeals in Morial v. Judiciary Comm'n of the State of Louisiana, 565 F.2d 295, 303 (5th Cir.1977) as follows:
By requiring a judge to resign at the moment that he becomes a candidate, the state insures that the judge will not be in a position to abuse his office during the campaign by using it to promote his candidacy. The appearance of abuse which might enshroud even an upright judge's decisions during the course of a hard-fought election campaign is also dissipated by requiring the judge to resign. He who does not hold the powers of the office cannot abuse them or even be thought to abuse them.
Even clearer is the reasonable necessity of the resignation requirement to the prevention of post-campaign abuse or its appearance. It is apparent that *1207 the prevention of post-campaign abuse calls for measures which are effective in the post-campaign period. A leave of absence for the duration of the campaign wholly fails to meet this requirement of post-campaign effectiveness....
Justices of the peace exercise significant authority in both civil and criminal matters. Cook at p. 6, 906 So.2d at 424. That these reasons apply with equal force to justices of the peace is evident. Consequently, this court has determined that the provisions of Canon 7(I) apply with equal force to justices of the peace.
Because the Code, including its prohibition of judges becoming candidates for non-judicial offices prior to resigning their judicial offices, is the exclusive means by which judges' conduct is governed, the exception provided in La. R.S. 42:1167 cannot be relied upon or enforced. Canon 7(I), adopted pursuant to this court's constitutional authority, is controlling and cannot be made to yield to a legislative enactment that conflicts with this authority. See e.g. Safety Net for Abused Persons v. Segura, 96-1978, p. 4 (La.4/8/97), 692 So.2d 1038, 1041 ("With respect to legislation that has an impact on the judicial system, this court will uphold legislative acts passed in aid of the judiciary's inherent power, but will strike down statutes which tend to impede or frustrate its authority."). Consequently, Justice of the Peace Freeman was bound to adhere to the requirements of Canon 7(I), and his failure to resign his office of justice of the peace when he became a candidate for police jury violated this Canon.
Canon 2(A) provides that "[a] judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." By continuing to hold his office of justice of the peace while actively campaigning for the non-judicial office of police juror, Justice of the Peace Freeman did not act in a manner that promotes public confidence in the integrity of the judiciary. The very reason for the requirement that a justice of the peace must resign when he becomes a candidate for a non-judicial office is to prevent the appearance of abuse that might arise during a contested campaign. Thus, by failing to resign his position of justice of the peace when he became a candidate for police jury, Justice of the Peace Freeman also violated Canon 2(A). These actions also violated La. Const. art. V, § 25(C). We agree with the hearing officer and the Commission that there was no evidence presented that Justice of the Peace Freeman violated Canon 1.
Having found Justice of the Peace Freeman was guilty of misconduct under both the Code of Judicial Conduct and the Louisiana Constitution, we must now determine the appropriate sanction for his actions. The commission recommends that Justice of the Peace Freeman be removed from office. We disagree with this recommendation and find that Justice of the Peace Freeman's conduct, while clearly deserving the imposition of significant discipline, does not warrant removal.
This court has recognized that the fundamental purpose of the Code of Judicial Conduct is protection of the public rather than discipline of the judge. In re: Marullo, 96-2222, p. 6 (La.4/8/97), 692 So.2d 1019, 1023. Removal of a judge from duly-elected office is the most severe sanction this court may impose under its constitutional authority. In re: Hunter, 02-1975, p. 11 (La.8/19/02), 823 So.2d 325, 333. We must be mindful that removal of a duly-elected officer "is an extremely serious undertaking that should be carried out with the utmost care because it disrupts the public's choice for judiciary service." In re: Jefferson, 99-1313, p. 17 *1208 (La.1/19/00), 753 So.2d 181, 194. In In re: Whitaker, 463 So.2d 1291, 1303 (La.1985), this court stated:
The most severe discipline should be reserved for judges who use their office improperly for personal gain; judges who are consistently abusive and insensitive to parties, witnesses, jurors and attorneys; judges who because of laziness or indifference fail to perform their judicial duties to the best of their ability; and judges who engage in felonious criminal conduct.
This court has explained, however, that the four types of conduct recognized in Whitaker as warranting removal were not meant to be an exclusive list. In re: Huckaby, 95-0041, p. 7 (La.5/22/95), 656 So.2d 292, 296-97. The Huckaby court stated:
Indeed, both La. Const. art. V, § 25 and the Code of Judicial Conduct contemplate, and allow, removal for a broader range of offenses than the illustrative list set forth in Whitaker. Under Article V, § 25(C), a judge may be removed from office for, among other things, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, and, as indicated supra, violations of the Canons of the Code of Judicial Conduct also serve as a basis for imposition of judicial discipline. As such, our inquiry in this case is narrow: Did respondent's conduct, as admitted, violate Canons 1 and 2 as quoted, supra, and is that conduct "persistent public conduct prejudicial to the administration of justice that brings the judicial office into disrepute" to such an extent that respondent should be removed from office?
Id. at pp. 7-8, 656 So.2d at 296-97.
In recommending removal, the Commission cited Whitaker, and noted that although Justice of the Peace Freeman did not exploit his position for personal gain, he declined to pursue a definitive answer regarding whether he was required to resign his position as justice of the peace because he benefitted from the delay in resigning. The Commission also cited several recent cases in which this court found removal warranted. Finally, the Commission pointed out that this case is not easily comparable to other judiciary discipline cases, but concluded that removal was appropriate because if Justice of the Peace Freeman had resigned as required by the Code, he would no longer be serving as justice of the peace. According to the Commission, allowing any other sanction would send a message that breaking the rule could prove beneficial.
The Commission also presented an analysis of several factors this court has utilized in determining the appropriate sanction to be imposed in non-removal cases. These non-exclusive factors include:
(a) whether the misconduct is an isolated instance or evidenced a pattern of conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his position to satisfy his personal desires.
In re: Chaisson, 549 So.2d 259, 266 (La. 1989) (quoting Matter of Deming, 108 Wash.2d 82, 736 P.2d 639, 659 (1987)).
*1209 At the outset, we reiterate that judicial discipline can still be imposed even in the face of a lack of conscious intent. Alfonso at p. 8, 957 So.2d at 126. We note also that there was perhaps some question regarding whether justices of the peace were required to resign when they became candidates for non-judicial office. However, Justice of the Peace Freeman failed to pursue a definitive answer from the Attorney General's office regarding the issue of whether he was required to resign his position. Additionally, Justice of the Peace Freeman received notice of the complaint to the Commission prior to the election, yet he did not resign his office as justice of the peace or renounce his candidacy for the non-judicial office. The misconduct of Justice of the Peace Freeman occurred in the performance of his judicial duties, and he had been serving as justice of the peace for more than four and a half years at the time he became a candidate for the non-judicial office. Judge Freeman's misconduct can be said to cast the judiciary in a negative light, and, indeed, the anonymous letter asked whether he was "above the law."
In mitigation, the record reveals no prior misconduct by Justice of the Peace Freeman. Justice of the Peace Freeman acknowledged that he now understands that he must resign if he wishes to become a candidate for a non-judicial office. The commission found, and we agree, that Justice of the Peace Freeman did not exploit his position for personal gain and considers his service as justice of the peace a type of community service.
The Commission argues that removal is called for in this case because if Justice of the Peace Freeman had complied with Canon 7(I) as required, he would no longer be serving as justice of the peace. Further, the Commission points out that any discipline short of removal would allow him to benefit from his misconduct. We agree that Justice of the Peace Freeman's misconduct calls for significant discipline. Furthermore, we agree that he should not be allowed to benefit from his misconduct such that he retains his office as justice of the peace when he should have resigned it. However, considering all of the above, particularly the fact that there did exist some measure of ambiguity in the law regarding whether a justice of the peace was required to resign when he became a candidate for a non-judicial office, we do not believe Justice of the Peace Freeman's misconduct warrants the most severe discipline of removal. Cf. In re: Franklin, 07-1425 (La.11/27/07), 969 So.2d 591; In re: Cook, 05-0783 (La.6/29/05), 906 So.2d 420. Such a sanction would preclude him from becoming a candidate for judicial office for a minimum of five years and until his eligibility to seek judicial office is certified by this court. La. Sup.Ct. Rule XXIII, § 26. Instead, we believe it is appropriate to suspend Justice of the Peace Freeman without pay for the remainder of his term.[14] This sanction serves to protect the public interest and ensures that Justice of the Peace Freeman does not benefit from his misconduct. We further order Justice of the Peace Freeman to reimburse and pay the Commission the amount of $458.50 in costs.

Decree
For the reasons assigned, it is ordered that Justice of the Peace Larry Freeman be suspended for the remainder of his term without pay for violating the Code of Judicial Conduct and Article V, § 25(C) of the 1974 Louisiana Constitution. It is further ordered that Justice of the Peace *1210 Larry Freeman reimburse the Judicial Commission of Louisiana the sum of $458.50.
JOHNSON, J., concurs.
NOTES
[1] Specifically, the anonymous letter, dated September 10, 2007, stated in its entirety:

Judge Larry Charles Freeman, Justice of the Peace in the 5th Ward of St. Helena Parish is a candidate for Police Juror, 5th District and he has not resigned his being a judge. Is he above thel [sic] law? He will get by with this if quick action is not taken.
[2] Canon 1 of the Code of Judicial Conduct, entitled, "A Judge Shall Uphold the Integrity and Independence of the Judiciary", provides:

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and shall personally observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code are to be construed and applied to further that objective. As a necessary corollary, the judge must be protected in the exercise of judicial independence.
[3] The pertinent provisions of Canon 2, entitled, "A Judge Shall Avoid Impropriety and the Appearance of Impropriety in All Activities," state:

A. A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
[4] Canon 7(I) of the Code of Judicial Conduct states:

I. Candidacy for Non-Judicial Office. A judge shall resign his or her office when the judge becomes a candidate either in a party primary or in a general election for a non-judicial office, except that a judge may continue to hold judicial office while being a candidate for election to or serving as a delegate in a state constitutional convention, if the judge is otherwise permitted by law to do so.
[5] La. Const. art. V, § 25(C) provides in pertinent part:

On recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute....
[6] Justice of the Peace Freeman testified that the signature affixed to the report was not his, but stated it was his Candidate's Report that had "probably" been filled out and signed by his wife.
[7] In his testimony before the Commission in June, respondent clarified it was not he who asked the question of the Attorney General, but others who attended the conference.
[8] When questioned by the Commission in June, respondent clarified that he did not directly speak with an attorney about the ethical propriety of his retaining his judicial seat while running for the office of police juror. Instead, respondent testified that he relied upon the statements of another unnamed person who discussed the necessity of resigning to run with a state representative, who reportedly said the justice of the peace did not have to resign. Respondent could have subpoenaed the "go-between" attorney or anyone else he consulted, but he chose not to do so.
[9] At his appearance before the Commission in June, when questioned further on this point, respondent said he decided on his own not to follow up this inquiry as to any ethical prohibition of his candidacy for a non-judicial position.
[10] La. Const. art. V, § 25(C) provides:

On recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, conduct while in office which would constitute a felony, or conviction of a felony. On recommendation of the judiciary commission, the supreme court may disqualify a judge from exercising any judicial function, without loss of salary, during pendency of proceedings in the supreme court. On recommendation of the judiciary commission, the supreme court may retire involuntarily a judge for disability that seriously interferes with the performance of his duties and that is or is likely to become permanent. The supreme court shall make rules implementing this Section and providing for confidentiality and privilege of commission proceedings.
[11] Specifically, La. R.S. 42:39 provides in its entirety:

A. After July 31, 1968, no person serving in or elected or appointed to the office of judge of any court, justices of the peace excepted, shall be eligible to hold or become a candidate for any national, state or local elective office of any kind whatsoever, including any national, state or local office in any political party organization, other than a candidate for the office of judge for the same or any other court.
B. The provisions of Subsection (A) of this section shall not be construed as prohibiting any person from resigning from his office as judge of any court for the purpose of becoming a candidate for nomination or election to any national, state or local elective office for which he is qualified and eligible; provided, however, that the resignation of any such person shall be and is made not less than twenty-four hours prior to the date on which he qualifies as a candidate for nomination or election to the office to which he seeks nomination or election.
C. If any judge elected or appointed, justice of the peace excepted, qualifies for any other elective position, other than those allowed by the provisions of this section, without complying with the provisions of Subsection (B) set forth above, his qualification as a candidate for the other office shall ipso facto be null and void.
[12] La. R.S. 42:1167 provides:

All judges, as defined by the Code of Judicial Conduct, shall be governed exclusively by the provisions of the Code of Judicial Conduct, which shall be administered by the Judiciary Commission provided for in Article V, Section 25 of the Constitution of Louisiana.
[13] It is, of course, apparent that this court has exclusive authority, unlimited by the Code, to punish misconduct. Ellender at pp. 6-7, 889 So.2d at 230.
[14] It appears Justice of the Peace Freeman's current term ends December 31, 2008.