549 So.2d 259 (1989)
In re Judge Joel T. CHAISSON, 29th Judicial District Court, Parish of St. Charles.
No. 89-O-0526.
Supreme Court of Louisiana.
September 12, 1989.
*260 Ralph Capitelli, Richard A. Bordelon, Capitelli & Wicker, New Orleans, for applicant.
Mack Barham, Barham & Assoc., Margaret E. Woodward, New Orleans, for respondent.
COLE, Justice.[*]
This matter comes before the Court on the recommendation of the Louisiana Judiciary Commission that Judge Joel T. Chaisson be disciplined for alleged violations of Canons 1, 2, 4 and 7 of the Code of Judicial Conduct. The Commission's inquiries concerned Judge Chaisson's involvement in the post-trial settlement of a lawsuit brought by Irvin J. Carmouche, Jr. against the State of Louisiana; Judge Chaisson's role in Carmouche's retention of his son, Joel T. Chaisson, II, as Carmouche's attorney in a fee dispute; and Judge Chaisson's later real estate transaction with Carmouche. After a careful review of the evidence presented before the Commission and the applicable law, we conclude that Judge Chaisson's involvement in the settlement of the Carmouche lawsuit, while not proven by clear and convincing evidence to be actually improper, did create the "appearance of impropriety" in violation of Canon 2 of the Code of Judicial Conduct. Otherwise, we find Judge Chaisson's conduct not to be violative of the Code of Judicial Conduct.

I. ISSUES PRESENTED
In its Findings of Fact, Conclusions of Law and Recommendation, the Judiciary Commission found Chaisson guilty of three charges of misconduct and recommended that he be suspended from office for ninety (90) days without pay. The Commission's *261 conclusions and its recommended sanction form the basis for our review. See La. Const. Art. V, § 25(C). The following issues are raised by the proceedings below:
1) Whether Judge Chaisson's involvement in the ongoing settlement negotiations in the case entitled "Irvin J. Carmouche, Jr. v. State of Louisiana, Dept. of Transportation and Development" violated Canons 1, 2A., 2B., 4B. and 7A.(4) of the Code of Judicial Conduct;
2) Whether Judge Chaisson's involvement in Carmouche's retention of Joel T. Chaisson, II as his attorney in a fee dispute arising out of the lawsuit against the State violated Canons 1, 2A. and 2B. of the Code of Judicial Conduct;
3) Whether Judge Chaisson's involvement in a real estate transaction with Carmouche violated Canons 1, 2A. and 5C.(1) of the Code of Judicial Conduct; and
4) Whether Chaisson's violations of the Code of Judicial Conduct, if established, constitute "willful misconduct relating to his official duty," or "persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute" and therefore justify discipline under La. Const. Art. V, § 25(C) (1974).

II. FACTS
A brief overview of the sequence of events leading to the charges filed is necessary to place Judge Chaisson's conduct in perspective.[1]
On March 6, 1985, Irvin J. Carmouche, Jr. was awarded nearly $15,000,000 (not including interest) in damages by the 29th Judicial District Court for injuries received which rendered him a quadriplegic. The case was tried before another judge of the 29th Judicial District, not Judge Chaisson. The judgment was against the state and Carmouche's attorneys thereafter began negotiations with the state in an effort to structure a settlement. Any settlement reached would require a legislative act to appropriate funds for payment. Carmouche felt his attorneys were pressuring him to accept an unsatisfactory settlement proposal, using the deadline for introduction of legislation as reason for his immediate assent. Carmouche's sister, who knew Judge Chaisson and who knew he was a former legislator, called the judge to ask if bills could be introduced after the deadline. Judge Chaisson told her they could and, at the sister's request, he agreed to see Carmouche.
Judge Chaisson testifed he was moved to compassion by the sight of Carmouche. Carmouche was very ill at the time and he expressed concern that he would not live long enough to benefit from the annuity and the large medical trust his attorneys were recommending. Judge Chaisson expressed no opinion on the conduct of Carmouche's attorneys but he promised Carmouche he would check on the status of the settlement when he was in Baton Rouge relative to a judicial salary bill which was pending before the legislature.
While in Baton Rouge, Judge Chaisson spoke with Judge C. William Roberts, executive counsel to Governor Edwards, and Charles Patin, the Assistant Attorney General who was handling the settlement negotiations for the State. Both indicated Judge Chaisson inquired into the status of the settlement negotiations as a friend of the family and that he made no effort to influence the process. Representative Eddie Doucet testified he spoke with Judge Chaisson during the 1985 legislative session but does not recall Judge Chaisson seeking his support for the appropriation bill. Judge Chaisson communicated what he had learned to Carmouche who in turn passed the information on to his attorneys. The record shows Judge Chaisson never informed Carmouche's lawyers of his involvement. The case subsequently settled to Carmouche's satisfaction.
In September 1985, Carmouche became involved in a fee dispute with his attorneys. Carmouche called Judge Chaisson who informed him that he should seek legal advice on the problem. Carmouche consulted *262 his brother-in-law about a good local attorney, and he recommended Joel T. Chaisson, II, Judge Chaisson's son. Carmouche called Judge Chaisson and asked if he thought his son could handle the fee dispute litigation. Judge Chaisson told him he thought his son could handle the matter or associate additional counsel who could handle it. Judge Chaisson then introduced his son to Carmouche. After considerable litigation, the fee dispute was resolved in Carmouche's favor.
In December 1985, Judge Chaisson met Carmouche at a social function where the two of them discussed real estate investments. Carmouche subsequently bought one-half of Judge Chaisson's interest in a piece of property for $150,000.00. Joel T. Chaisson, II represented Carmouche in the sale. The property was subject to a collateral mortgage which was disclosed to Carmouche by Judge Chaisson. Carmouche's stipulated testimony is that he did not want the transaction recorded because he prefers to keep his business private. The risk from lack of recordation was explained to Carmouche by Joel T. Chaisson, II.
On February 3, 1987, counsel for the law firm which originally represented Carmouche reported Chaisson's conduct to the Judiciary Commission. After a preliminary hearing at which Judge Chaisson testified, the Judiciary Commission concluded a formal hearing was justified and brought formal charges against Judge Chaisson. After the formal hearing, the Commission issued written Findings of Fact, Conclusions of Law and a Recommendation that disciplinary action be taken. In this posture, the matter now stands before the Court.

III. ANALYSIS
Issue 1: Involvement in Settlement Negotiations
The record, particularly the testimony of Judge Chaisson himself, establishes that Judge Chaisson told Carmouche he would check on the status of the settlement when he was in Baton Rouge on other business. He spoke with retired judge Roberts, executive counsel to the governor, who put Judge Chaisson in touch with Charles Patin of the Attorney General's office. From Patin, Judge Chaisson learned what settlement figures were "on the table" but he also informed Patin, in general terms, of Carmouche's desires as to the allocation of money among a cash payment, an annuity, and a medical trust.[2] Judge Chaisson admitted he spoke with legislators about the matter and expressed concern they were "making an issue out of that case when they had paid other judgments." Judge Chaisson also indicated he had not informed Carmouche's attorneys of his involvement and saw no need for him to have done so.
The question therefore becomes whether Judge Chaisson's actions violate any of the Canons set forth in the Code of Judicial conduct, 8 La.Rev.Stat.Ann. 134-143 (West Supp.1989). The Judiciary Commission found Judge Chaisson's conduct violated Canons 1, 2 A., 2 B. and 4 B. We agree in part with these conclusions. Canon 1 provides: "A Judge Should Uphold the Integrity and Independence of the Judiciary." Judge Chaisson's actions were not motivated by hope of personal gain or other corrupt motive. Cf. In re Wilkes, 403 So.2d 35, 41-42 (La.1981) (justice of the peace violated Canon 1 by using his office to facilitate collection of delinquent accounts). Furthermore, Judge Chaisson was not involved in his judicial capacity in the Carmouche case. It was presided over by another member of the bench, Judge Marino.[3] We therefore conclude, as a matter of law, Judge Chaisson's involvement in the settlement process did not threaten the integrity of the judiciary contrary to Canon 1.
*263 A closer question is whether Judge Chaisson's actions impugned the independence of the judiciary. The Commission argues Judge Chaisson's communications with Patin on Carmouche's behalf cast him in the role of advocate rather than impartial and independent judge. Chaisson counters that he served as a mere "conduit" of information and argues that since he had no role in the original trial, he was not barred from taking the limited action he did in this matter. We conclude Judge Chaisson's conduct, though not to be condoned, did not actually threaten the independence of the judiciary proscribed by Canon 1. Judge Chaisson was not involved in the case in his judicial capacity, nor did he actively lobby for a particular outcome in the settlement process. The fact he sought no personal advantage is also significant. On balance, Judge Chaisson acted more like a legislator serving a constituent than a partisan advocate. While this is not a proper role for a judge, we find Judge Chaisson's limited involvement did not compromise the independence of the judicial branch. Therefore, we find the Commission did not establish by clear and convincing evidence[4] that Judge Chaisson violated Canon 1.
We agree with the Commission, however, that Judge Chaisson's participation in the settlement process of the Carmouche case does violate Canon 2: "A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities." In particular, Canon 2 A. provides in relevant part: "A judge ... should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Canon 2 B. also applies: "A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interest of others...."
The Commission gathered no evidence to suggest Judge Chaisson's conversations with Roberts and Patin actually influenced the Carmouche settlement, nor can such influence be readily inferred from the circumstantial evidence in the record. Judge Chaisson asked about the settlement figures "on the table" and relayed the information to Carmouche. The settlement figures received were not affected by the "prestige" of Judge Chaisson's office and thus we conclude Judge Chaisson did not use the prestige of his office to advance Carmouche's "interests."
Our inquiry does not end there, however. The proper test of whether Judge Chaisson's actions gave the appearance of impropriety is an objective one: whether a reasonable person would be justified in suspecting that Judge Chaisson lent "the prestige of his office to advance the private interest" of Carmouche. See In re Foster, 271 Md. 449, 318 A.2d 523, 533 (1974); Martineau, Disciplining Judges for Nonofficial Conduct: A Survey and Critique of the Law, 10 U.Balt.L.Rev. 225, 243 (1981). The record establishes by clear and convincing evidence that Judge Chaisson's role in the settlement conference created the appearance of impropriety under this objective test. It is highly unlikely that an ordinary citizen claiming to be a friend of Carmouche would have been made privy to the details of the settlement negotiations. In addition, since the matter settled on terms favorable to Carmouche shortly after Judge Chaisson's involvement, a reasonable person might well suspect that this was the result of some improper influence. This suspicion is made even more reasonable by the fact that the true nature of Judge Chaisson's involvement was not public and thus even more likely to be perceived as wrongdoing. These factors alone are sufficient to establish the appearance of impropriety that weakens "public confidence in the integrity of the judiciary" contrary to Canon 2 A. by raising a reasonable *264 person's suspicions that Judge Chaisson lent "the prestige of his office" to advance Carmouche's interests contrary to Canon 2 B.
The Judiciary Commission also found Judge Chaisson's involvement in the Carmouche settlement violated Canon 4 B. Canon 4 B. permits a judge to "consult with an executive or legislative body or official, but only on matters concerning the administration of justice." Despite Judge Chaisson's purported concern about the impact of the Carmouche case on the contingency fee in Louisiana, his involvement with the legislative and executive branch officials cannot reasonably be described as "concerning the administration of justice." The question then becomes whether Judge Chaisson's inquiries rose to the level of a consultation. Though the question is a close one, we conclude they did not. The testimony of Judge Chaisson and the stipulated evidence of Roberts, Patin and Doucet stress the brief and limited nature of Judge Chaisson's queries. A critical fact is the absence of any evidence to suggest Judge Chaisson advocated a specific outcome or suggested specific steps that the officials should take. While we agree with the Commission that Judge Chaisson's most prudent course would have been to have no contact with Patin, Roberts or Doucet on Carmouche's behalf, his minimal and largely passive queries do not rise to the level of a consultation in violation of Canon 4 B. We do think, however, members of the judiciary should avoid any such contacts to avoid the appearance of impropriety raised by Judge Chaisson's conduct here.
Finally, the Judiciary Commission found Judge Chaisson's activities violated Canon 7 A.(4)'s prohibitions on political activity by a judge "except on behalf of measures to improve the law, the legal system, or the administration of justice." The political activity Judge Chaisson allegedly engaged in was his contacts with Roberts and Patin as well as Representative Doucet. It appears from the record, however, that Judge Chaisson's communications with the two executive branch officials, Roberts and Patin, were not "political" in any ordinary sense of the word. We decline to construe Judge Chaisson's requests for information as proscribed "political activity." Representative Doucet's evidence indicated Judge Chaisson did not lobby for the passage of Carmouche's settlement bill; he merely inquired about its status, a matter of public record. Had Judge Chaisson sought to influence the legislative or executive process, our conclusion would be different, but as we noted above, the record contains no clear and convincing evidence of this. Under the circumstances presented here, therefore, we find Judge Chaisson did not violate Canon 7 A.(4).
Issue 2: Involvement in Retention of Joel T. Chaisson, II
The Judiciary Commission found Judge Chaisson was also guilty of misconduct for the role he played in Carmouche's retention of his son, Joel T. Chaisson, II, as Carmouche's attorney in a fee dispute arising out of the settlement. If Judge Chaisson had urged Carmouche to hire his son or had recommended his son's services, we would agree, but this is not borne out by the record. Judge Chaisson properly informed Carmouche that he could give him no advice on the fee dispute. Carmouche then attempted to handle the matter himself but concluded he needed a lawyer and wanted to hire one from his hometown. He asked his brother-in-law for advice and his brother-in-law recommended Joel, Judge Chaisson's son, who had handled some legal work for him. Only then did Carmouche ask Judge Chaisson if he thought Joel could handle the case. In response to this direct inquiry, Judge Chaisson told Carmouche that he thought Joel could handle the case or associate with another attorney who could do so. Judge Chaisson introduced Carmouche to Joel, but nothing in the record suggests he encouraged Carmouche to hire him or touted his son's abilities.
Under these circumstances, we conclude Judge Chaisson did not violate Canons 1 or 2. The position of a judge with children paracticing law is a difficult *265 one, particularly in a small community. He may not use his position to solicit legal work for them, but the Code does not require him to actively discourage potential clients. If Carmouche had asked Judge Chaisson to recommend a lawyer and Judge Chaisson had recommended his son, we would agree with the Commission that this is misconduct. Here, however, Judge Chaisson merely gave a circumspect response to a direct inquiry about his son's competence. We find, as a matter of law, Judge Chaisson's acts in this regard posed no threat to the integrity or independence of the judiciary under Canon 1. Furthermore, we find this is not an instance of the judge allowing a family relationship "to influence his judicial conduct or judgment" under Canon 2 B. Judge Chaisson's judicial conduct or judgment was not involved. Judge Chaisson's actions with respect to Carmouche's retention of his son did not rise to the level of misconduct.
Issue 3: Real Estate Transaction
The Judiciary Commission found Judge Chaisson's real estate transaction with Carmouche violated Canons 1, 2 A. and 5 C.(1) of the Code of Judicial Conduct. We disagree. The evidence of Carmouche and Judge Chaisson establishes Carmouche approached Judge Chaisson about real estate investments. Judge Chaisson did not suggest the transaction but ultimately sold Carmouche one-half of his interest in a piece of property at Carmouche's request. Carmouche was represented at the sale by Joel Chaisson, but it was at Carmouche's request that the deed was not recorded. Carmouche suffered no loss despite his failure to record and stipulated the fact he stood to make a profit on a portion of the property that was about to be sold.
Under Canon 5 C.(2), a judge is specifically permitted to "hold and manage investments, including real estate." Canon 5 C.(1), however, indicates a judge "should refrain from financial and business dealings that tend to reflect adversely on his impartiality, interfere with the proper performances of his judicial duties, exploit his judicial position, or involve him in frequent transactions with lawyers or persons likely to come before the court on which he serves." Each clause of 5 C.(1) is aimed at a specific potential abuse, none of which occurred here. We fail to see how this transaction reflects adversely on Chaisson's impartiality since Carmouche was not a litigant before Judge Chaisson and since no evidence in the record, direct or circumstantial, in any way implies that Carmouche's investment was a quid pro quo for Judge Chaisson's prior "services" to Carmouche. Moreover, nothing in the record suggests this real estate deal interfered with Judge Chaisson's performance of his judicial duties. Nor did Judge Chaisson exploit his judicial position to obtain Carmouche's participation.[5] Finally, since Carmouche had resolved his pending lawsuit, there is no evidence that the transaction with Carmouche would lead to frequent recusals of Judge Chaisson or that Carmouche was more likely than any other citizen to come before Judge Chaisson's court. Hence, the transaction in question did not violate Canon 5 C.(1).
The Commission also contends Judge Chaisson's involvement in the real estate transaction violated Canons 1 and 2 A. There is no evidence that Judge Chaisson was guilty of any sharp practice or overreaching that would implicate the integrity provisions of Canon 1. Nor do we find the transaction marked with the "appearance of impropriety" that would undermine "public confidence in the integrity and impartiality of the judiciary" under Canon 2 A. Unlike Judge Chaisson's involvement in the settlement negotiations, the circumstances surrounding the real estate deal do not raise an objectively reasonable suspicion that Judge Chaisson abused or exploited *266 his judicial position. Accordingly, we find this issue to be without merit. Issue 4: Whether Discipline is Warranted Under La. Const. Art. V, § 25(C).
Having determined that Judge Chaisson's involvement in the Carmouche settlement negotiations created the appearance of impropriety in violation of Canon 2 of the Code of Judicial Conduct, we agree with the Commission that discipline is proper under La. Const. Art. V, § 25(C). We find the facts establishing a violation of Canon 2 are consistent with the conduct set forth in La. Const. Art. V, § 25(C) for which this court may impose sanctions.
We noted in In re Dupont that the Canons of the Code of Judicial Ethics do not replace or modify the constitutional requirements for the imposition of discipline. 322 So.2d 180, 184 (La.1975) (citations omitted). Nevertheless, as we held in In re Wilkes, supra, violations of the Canons can, without more, serve as a basis for discipline under Article V, § 25(C). 403 So.2d at 40 (citations omitted). Here, however, we find Judge Chaisson's inquiries were "public"; i.e., they were known to a number of individuals. They were also "persistent" inasmuch as the evidence clearly establishes Judge Chaisson spoke with Roberts, Patin and Doucet, as well as Carmouche, on several occasions. Finally, as we noted in our discussion above, Judge Chaisson's actions on Carmouche's behalf created the appearance of impropriety that would lend the citizens of Louisiana to question the integrity of the judiciary. Such conduct brings the judicial office into disrepute. Accordingly, we find the Commission has proven by clear and convincing evidence that Judge Chaisson violated both the Code of Judicial Conduct and La. Const. Art. V, § 25(C).

IV. SANCTIONS
Since we find Judge Chaisson was guilty of misconduct under both the Code of Judicial Conduct and the Louisiana Constitution, we now turn to the question of sanctions. The Judiciary Commission, having found Judge Chaisson guilty of multiple violations, recommended he be suspended without pay for 90 days. After giving due weight to this recommendation, we conclude the proposed penalty is unwarranted given the totality of the circumstances.
In Matter of Deming, the Washington Supreme Court articulated a non-exclusive list of factors a court may consider in imposing discipline on a judge:
To determine the appropriate sanction, we consider the following nonexclusive factors: (a) whether the misconduct is an isolated instance or evidenced a pattern of conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his position to satisfy his personal desires.
108 Wash.2d 82, 736 P.2d 639, 659 (1987). We find these criteria are properly considered in determining the appropriate sanction in this case.
Judge Chaisson's involvement in the Carmouche matter was an isolated event and involved a violation of a single Canon of the Code of Judicial Conduct. The misconduct did not occur in Judge Chaisson's truly official capacity and Judge Chaisson has acknowledged his error. Nothing in the record indicates Judge Chaisson has been guilty of other violations. The record is also replete with testimonials from attorneys and other individuals attesting to Judge Chaisson's judicial acumen and his reputation for fairness. We also think it significant that Judge Chaisson acted in good faith for reasons of compassion, even if misguided, for Irvin Carmouche's condition, not for personal gain. As the Michigan Supreme Court observed, *267 however, "good faith" is a mitigating factor, not an affirmative defense. Matter of Laster, 404 Mich. 449, 274 N.W.2d 742 (1979); see also In re Douglas, 135 Vt. 585, 382 A.2d 215 (1977) (good faith properly considered on disposition). Finally, the absence of clear precedent forbidding the conduct Judge Chaisson engaged in here militates in favor of a lesser sanction. In re Baker, 535 So.2d 47 (Miss. 1988).
The purpose of a judicial disciplinary proceeding is not simply to punish an individual judge but to purge the judiciary of any taint.[6] Our review of prior Louisiana judicial disciplinary cases provides little guidance in determining the appropriate penalty here.[7] However, having weighed the seriousness of the appearance of impropriety created by Judge Chaisson's conduct and the mitigating factors noted above, we conclude formal censure is the appropriate penalty. In Lonschein v. State Comm'n on Judicial Conduct, the New York Court of Appeals found admonishment was an appropriate penalty where a judge requested an employee of an executive agency to expedite the processing of a license application. 50 N.Y.2d 569, 408 N.E.2d 901, 430 N.Y.S.2d 571 (1980). The Court found Lonschein's judicial position would necessarily result in his request being given greater weight. 430 N.Y.S.2d at 573, 408 N.E.2d at 903. Judge Chaisson's misconduct was somewhat more serious since he involved himself in litigation that was unsettled. In addition, his involvement in the Carmouche settlement process gave rise to an appearance of more serious impropriety. Accordingly, we find the more serious sanction of formal censure is the appropriate penalty.

DECREE
It is therefore ordered that Judge Joel Chaisson be formally censured for misconduct violative of Canon 2 of the Code of Judicial Conduct and Article V, § 25(C) of the Louisiana Constitution.
JUDGE CENSURED.
DIXON, C.J., dissents as to the penalty, and would follow the recommendation of the Commission.
CALOGERO, J., concurs in the result while disagreeing only with the majority in not finding a violation of Canon 4 B which permits a judge to consult with an executive or legislative body, but only on matters concerning administration of justice.
NOTES
[*] Chief Judge Pike Hall of the Court of Appeal, Second Circuit, served as Justice ad hoc for Lemmon, J., not sitting.
[1] Judge Chaisson was the only live witness who testified before the Commission. The other evidence consisted of stipulations by counsel of the facts to which each witness would testify.
[2] According to the stipulated testimony of one of Carmouche's attorneys, Patin communicated certain proposed settlement terms to Judge Chaisson before communicating them to Carmouche's counsel.
[3] Cf. In re Inquiry Concerning a Judge Gridley, 417 So.2d 950 (Fla.1982). There, a judge was found to have violated Canon 1 for injecting himself into a criminal case over which he had presided.
[4] See In re Daniels, 340 So.2d 301, 306 (La.1976): "Before this Court can censure, suspend with or without salary, remove from office, or retire involuntarily a judge, proof of the charge or charges must be clear and convincing." Logic dictates the same standard of proof should apply in establishing violations of the Code of Judicial Conduct enacted by this Court to help define actionable misconduct under Article V, § 25 of the Constitution.
[5] This prohibition seems clearly aimed at a judge using "inside information" or improper leverage to obtain a financial advantage. There is no evidence of this kind of impropriety in this case. Cf. In re Foster, 318 A.2d at 535-537. In Foster, the success of a real estate development depended on official action by the city. A judge's active involvement in the project could thus create an appearance of impropriety if not actual abuses. The record before the Commission here contains no evidence of similar questionable behavior.
[6] As an incidental matter, the record of these proceedings offers some guidance to other judges who are confronted with similar dilemmas. See generally Lubet, The Search for Analysis in Judicial Ethics or Easy Cases Don't Make Much Law, 66 Nebraska L.Rev. 430-444 (1987).
[7] None of our prior disciplinary proceedings involved conduct similar to Judge Chaisson's in this case. We note, however, that we have imposed 90 day suspensions on judges involved in misconduct directly relating to their office. See In re Wilkes, supra; In re Daniels, supra. We have found censure appropriate for misconduct not relating to a judge's official duties and that did not constitute egregious wrongdoing. See, e.g., In re Dupont, supra; but see In re Haggerty, 257 La. 1, 241 So.2d 469 (1970) (removal warranted where private misconduct included involvment in gambling and pornography contrary to the criminal law).