973 So.2d 712 (2008)
In re Justice of the Peace Jamie FREDERIC-BRAUD.
No. 2007-O-1909.
Supreme Court of Louisiana.
January 25, 2008.
*713 Office of Special Counsel, Steven Robert Scheckrnan, Special Counsel, Robert Edward McKnight, Jr., Assistant Special Counsel, for applicant.
Brown, Sims, Charles Gavin Clayton, IV, New Orleans, for respondent.
Nancy E. Rix, Romona Lois Jordan, Commission Counsel.
JOHNSON, Justice.
This matter comes before the Court on the recommendation of the Judiciary Commission of Louisiana ("Commission"), pursuant to LSA-Const. art. V, § 25(C), that Justice of the Peace Jamie Frederic-Braud ("Justice of the Peace Braud") of the Third Justice Court for the Parish of Ascension, State of Louisiana, be publicly censured, and ordered to reimburse the Commission's costs incurred in the investigation and prosecution of this case. For the reasons that follow, we find Justice of the Peace Braud should be suspended without pay for fifteen days and ordered to reimburse and pay the Commission's cost in the amount of $175.

FACTS AND PROCEDURAL HISTORY
Justice of the Peace Jamie Frederic-Braud was elected to serve in 1996, and assumed the office on January 1, 1997. She has served in this position continuously since then. She was reelected in 2002 to a term that expires on. December 31, 2008.
On June 21, 2007, Justice of the Peace Braud and the Office of Special Counsel jointly filed a statement of, stipulated uncontested material facts and conclusions of law.

Formal Charge 0277The Ziegler Matter
A & M Heating v. Ziegler
The first formal charge against Justice of the Peace Braud arose from a complaint received on August 25, 2003 from Tamara Ziegler, the wife of Marvin Ziegler, a defendant in the lawsuit entitled A & M Heating v. Ziegler, No. C-0301-008-3. Justice of the Peace Braud personally served Mr. Ziegler with a citation on January 25, 2003, and entered a default judgment against Marvin Ziegler in the above pending matter on March 18, 2003. When A & M Heating later filed a Motion for Judgment Debtor Examination of Mr. Ziegler, Justice of the Peace Braud issued an order setting the examination for July 14, 2003. This date was subsequently continued at the request of Mr. Ziegler's counsel of record, Attorney S. Stephen Spring, II ("Attorney Spring"). Justice of the Peace Braud granted the Motion to Continue in an undated order stating that "I will contact your office to let you know the [new] date." After a discussion with Attorney Spring's paralegal, Justice of the Peace *714 Braud reset the judgment debtor examination to August 13, 2003. The Notice of the resetting was never served on Mr. Ziegler or his attorney by either registered or certified mail or by personal or domiciliary service, as required by LSA-C.C.P. arts. 1313-1314,[1] but it was faxed to. Attorney Spring.
Mr. Ziegler did not appear for the judgment debtor examination on August 13, 2003. As a result, Justice of the Peace Braud ordered Mr. Ziegler to show cause on August 19, 2003 why he should not be adjudged in contempt of court. The rule to show cause was served on Mr. Ziegler's attorney on August 15, 2003. Notwithstanding the show cause order, on August 13, 2003, Justice of the Peace Braud signed a warrant for Mr. Ziegler's arrest on the contempt charge. The constable and other law enforcement officials tried executing the arrest warrant, but Mr. Ziegler was not home at the time.
On August 14, 2003, Mr. Ziegler filed a motion seeking the recall of the arrest warrant. Justice of the Peace Braud informed Attorney Spring, by faxed correspondence on the morning of August 15, 2003, that her issuance of the arrest warrant was erroneous and that she was granting his motion. On the same day, Justice of the Peace Braud recalled the arrest warrant.
Gonzales Chevron v. Ziegler
Mr. Ziegler was a defendant in a second case pending in Justice of the Peace Braud's court captioned Gonzales Chevron v. Ziegler, which was set for trial on August 13, 2003. The Notice of Trial was not properly served via registered or certified mail or by personal or domiciliary service, as required by LSA-C.C.P. arts. 1313-1314. However, the Notice was faxed and/or mailed by ordinary U.S. mail to Attorney Spring.
Mr. Ziegler did not appear for trial. On August 13, 2003, Justice of the Peace Braud entered a default judgment against Mr. Ziegler and in favor of Gonzales Chevron in the amount of $3,000 plus interest and costs.[2] Mr. Ziegler appealed the default judgment to the 23rd Judicial District Court for the Parish of Ascension.

Formal Charge 0278The Worthless Check Matter
On March 11, 2002, Murray Alexander submitted a Worthless Check Report listing NSF checks written by Pamela Deslatte to Murray's Supermarket. Based on this report, Constable James E. LeBlanc ("the Constable") generated seven "Notice of Returned Check" forms addressed to Ms. Deslatte. Justice of the Peace Braud authorized the Constable to use her signature stamp. In addition to the amount of the NSF check, each of the seven "Notice of Returned Check" forms imposed: (1) a "service charge fee" of $25, (2) a "certified letter fee" of $3.94, despite the fact that the seven notices were sent together in *715 one envelope via ordinary mail, and (3)' a "court costs fee" of $60, even though there was no case pending before the court, either criminal or civil, at the time the notices were sent. Ms. Deslatte was charged $622.58 in fees on worthless checks in the amount of $282.66, for a total of $905.24.[3]
On April 7, 2004, Ms. Deslatte met with Justice of the Peace Braud and the Constable, and secretly recorded this meeting. During the meeting, the Constable announced that he had three warrants for Ms. Deslatte's arrest stemming from her failure to pay approximately $450 that was then due on the NSF checks, and that she would go to jail if she did not pay that amount the same day.
The three warrants, prepared by the Constable, had not been signed by Justice of the Peace Braud; therefore, the warrants were not valid. At the time of the meeting, there was no criminal matter pending against Ms. Deslatte in respondent's court. On April 7, 2004, Ms. Deslatte made a payment that cleared her of all the NSF checks with Constable LeBlanc's office.
On September 25, 2006, the Commission filed formal charges against Justice of the Peace Braud, alleging that she failed to follow the law with regard to the proper procedures for service of subpoenas, for finding a litigant in contempt and issuing an arrest warrant for contempt, and for the collection of worthless checks. In each instance, the Commission alleged that the respondent's conduct violated Canons 1[4] (a judge shall uphold the integrity and independence of the judiciary), 2A[5] (a judge shall respect and comply, with the law and act in a manner that promotes public confidence in the integrity and impartiality of the judiciary), and 3A(1)[6] (a judge shall be faithful to the law and maintain professional competence in it) of the Code of Judicial Conduct. The Commission further alleged that the respondent engaged in willful misconduct relating to her official duty and engaged in persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, in violation of LSA-Const. art. V, § 25(C).
Based on the stipulated facts as set forth above, the Office of Special. Counsel and Justice of the Peace Braud agreed *716 that Justice of the Peace Braud violated the Code of Judicial Conduct and the Constitution as set out in the Formal Charges.

PROCEEDINGS BEFORE THE COMMISSION
On July 20, 2007, the Commission conducted a brief hearing and accepted the stipulated facts and legal conclusions submitted by the parties. During the hearing, Justice of the Peace Braud introduced seven letters, attesting to her good character.
In response to the formal charges, Justice of the Peace Braud acknowledged and admitted the deficiencies in the practices and procedures she employed in conducting her court, but suggested that she had little formal training. She testified that other than having conversations with the previous justice of peace, and being instructed by Constable LeBlanc, who worked 12 years with the previous justice of peace, she received only a "stack of forms that was passed down . . . from the Attorney General's office."
Regarding the Ziegler matter, Justice of the Peace Braud testified that she never intended for Ziegler to be arrested or incarcerated. She maintained that it was her intent to have Mr. Ziegler brought to her court and discuss the pending matters, as she had reason to believe Mr. Ziegler would be leaving town. She also testified that she was unaware of Constable LeBlanc's conduct.
When questioned about her system for tracking cases on her docket, Justice of the Peace Braud testified that she has now implemented a policy that will avoid any improper service issues.
Regarding the Deslatte matter, Justice of the Peace Braud testified that she followed the procedure for the collection of NSF checks utilized by the previous justice of the peace "until we found that everything was incorrect and made the changes we are enacting today." When questioned about the actions she took in order to correct her practices and procedures relative to collection of NSF checks, Justice of the Peace Braud testified, "I began to investigate . . . what was wrong and to correct the problem . . . we [suspended collections of NSF checks] for approximately four to five weeks . . . while the new procedure was being put in place." She also testified that she developed new forms to be used in the collection of NSF checks in her court.

FINDINGS OF THE COMMISSION
Formal Charge 0277
The Commission found that Justice of the Peace Braud failed to give proper notice to Mr. Ziegler of judicial proceedings in her court (i.e., the judgment debtor examination in the A & M Heating ease and the trial of the Gonzales Chevron case, both on August 13, 2003) in violation of procedural due process and, in particular, LSA-C.C.P. art. 1313; and then found Mr. Ziegler in contempt of court without having conducted a hearing, or having allowed Mr. Ziegler to be heard in his defense. Justice of the Peace Braud, without signing a judgment of contempt, then issued a warrant for Ziegler's arrest based on the procedurally-deficient finding of contempt, in violation of LSA-C.C.P. art. 225.[7] While the warrant was eventually recalled, *717 and Mr. Ziegler was never arrested, it is likely that an arrest would have taken place had Mr. Ziegler actually been home when the police arrived to execute the warrant.
Formal Charge 0278
The Commission found that Justice of the Peace Braud failed to follow the law with regard to the proper procedures for collecting worthless checks. Justice of the Peace Braud was required to handle the worthless checks as a civil matter. She should have observed the procedural steps that apply in all civil matters-in particular, citation and service of process, as required by LSA-C.C.P. arts. 1201, 4919, and 4920, which would have given Ms. Deslatte formal notice of the claim and an opportunity to respond.[8] Instead, Justice of the Peace Braud allowed Constable LeBlanc to use her judicial authority (in the form of her signature stamp).
Justice of the Peace Braud also allowed the Constable to misrepresent to Ms. Deslatte during the April 7, 2004 meeting that her worthless checks were being handled as criminal matters. If Justice of the Peace Braud was indeed handling the worthless checks as criminal matters, then La. R.S. 13:2589(A)(1) prohibited her from charging the $60 fee that she collected as court costs on each of the worthless checks, and LSA-R.S. 14:71 limited the service charge to $15, rather than the $25 service charge that she collected on each of the worthless checks in civil cases. Justice of the Peace Braud permitted her judicial authority to be used in an extrajudicial manner, to collect worthless checks on behalf of local merchants. This misconduct was public in nature.
The Commission further found that Justice of the Peace Braud engaged in willful misconduct relating to her official duty and engaged in persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, all in violation of LSA-Const. art. V, § 25(C).
The Commission noted. that Justice of the Peace Braud admitted to her wrongful acts and stipulated to the facts and conclusions of law regarding her behavior. At the hearing, the respondent expressed her regrets about these cases and stressed that she has corrected the offending behavior, which the Commission found credible.
The Commission also noted that Justice of the Peace Braud was not a new justice of the peace when the misconduct occurred, as she took office in 1997. She has had three closed complaints[9] lodged *718 against her. Justice of the Peace Braud's, misconduct did not appear to arise from a desire to satisfy her personal desires, but from a lack of knowledge of the law.
The Commission concluded that Justice of the Peace Braud's actions were serious, but did not result in a loss of liberty, as in recent cases involving misconduct by justices of the peace, and thus did not warrant a recommendation of suspension. On the other hand, the Commission found that the prior complaints against the respondent militated against mere counseling or private admonition. Based on these considerations, the Commission recommended that Justice of the Peace Braud be publicly censured, and that she be ordered to reimburse and pay to the Commission $175.00 in court costs.

DISCUSSION
Because Justice of the Peace Braud and the Office of Special Counsel have stipulated to the facts and to the violation of Canons 1, 2 A, 3A(1) and 3 A(1) of the Code of Judicial Conduct and LSA-Const. art. V, § 25(C), the sole remaining issue for this Court is the appropriate discipline for her actions.
In determining an appropriate sanction, this Court is mindful that the primary purpose of the Code of Judicial Conduct is to protect the public rather than discipline judges. In re Harris, 98-0570 (La.7/8/98), 713 So.2d 1138; In re: Marullo, 96-2222 (La.4/8/97), 692 So.2d 1019.
While we recognize Justice of the Peace Braud did not intentionally violate the Code of Judicial Conduct, it is clear that her actions or inactions (i.e., her failure to employ the proper procedures for collecting worthless checks; her allowance of the Constable to use her signature stamp in his attempts to misrepresent judicial authority; her failure to properly serve notice of hearing dates, and conduct hearings, before holding a party in contempt and issuing an arrest warrant) are absolutely prohibited by the Judicial Canons Code of Conduct.
According to In re: Wimbish, 98-2882, p. 5 (La.4/13/99), 733 So.2d 1183, 1187:
The canons were designed to promote a standard for judicial conduct that continuously reaffirms the integrity of the judiciary. Judges hold a unique position of administering justice. They symbolize the law, and, accordingly, their actions reflect favorably or unfavorably on the judicial system. For this reason, it is important that judges comply with the laws and rules governing their conduct in a manner which promotes public confidence.
In determining the appropriate sanction for a judge who is subject to a disciplinary action, this court has considered several non-exclusive factors. In re: Best, 98-0122 (La.10/20/98), 719 So.2d 432; In re: *719 Chaisson, 549 So.2d 259 (La.1989). These factors are:
(a) whether the misconduct is an isolated instance or evidenced a pattern of conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his position to satisfy his personal desires.
In In re Crawford, 06-2385 (La.11/9/06), 943 So.2d 331, this Court held that public censure was warranted for justice of the peace's unauthorized practice of law where she prepared and notarized divorce pleadings in 16 separate cases. This Court found that her conduct did not arise from her from her official duties as a justice of the peace, personal gain was not the primary motivation for the conduct, and she modified her behavior as soon as it came to her attention that she had acted wrongfully.
In In re Broussard, 05-0475 (La.4/22/05), 900 So.2d 814, this Court held that public censure was the appropriate sanction for a non-lawyer justice of the peace's unauthorized practice of law, which involved him preparing, notarizing and filing divorce pleadings in eight cases.
In In re Alfonso, 07-120 (La.5/22/07), 957 So.2d 121, this Court held that issuing an arrest warrant against a neighbor without probable cause and setting an excessive bond of $50,000, which resulted in him being arrested and incarcerated overnight, warranted a thirty-day suspension without pay. The Court noted that Justice of the Peace Alfonso's misconduct was willful, not negligent, in that she acted despite her bias toward the defendant and her misconduct threatened the neighbor's liberty as he was incarcerated overnight.
In In re Adams, 07-426 (La.6/29/07), 959 So.2d 474, this Court held that the issuing of the arrest warrant for political reasons and setting excessive bonds, which resulted in two individuals being arrested and incarcerated for a day for a parade permit violation warranted the suspension of Justice of the Peace Adams for fifteen days without pay. This Court noted that "the misconduct occurred in the performance of his judicial duties and negatively impacted the public confidence in and respect for the judiciary." Id. at p. 481.
Applying the factors delineated in Chaisson, supra, to the instant case, we agree with the stipulated facts and conclude that Justice of the Peace Braud failed to follow the law regarding: 1) service of process; 2) default judgments; and 3) collection of NSF checks. We note that the public could construe her actions as an abuse of power, with a resulting belief that anyone could be subjected to similar unlawful conduct by the justice of the peace. As a consequence, the respondent created a lack of confidence and respect for the judiciary as a whole. The misconduct at issue has the potential to erode public confidence in the integrity of the judiciary. However, there is no evidence that Justice of the Peace Braud exploited her position for personal gain.
In addition to these factors, we find it significant that the Commission found Justice of the Peace Braud acted in good faith and was ignorant of the fact that her *720 procedural methods were improper. Good faith is not an affirmative defense to a judicial disciplinary charge; however, it may be considered as a mitigating factor which militates in favor of a lesser sanction. Marullo, 96 2222 at p. 7, 692 So.2d at 1023; Chaisson, 549 So.2d at 267.
Considering all these facts coupled with the fact that Justice of the Peace Braud had three prior complaints, we find that she should be suspended without pay for fifteen days and ordered to pay costs of the proceedings.

DECREE
For the reasons assigned, it is ordered that Justice of the Peace Jamie Frederic-Braud be suspended for fifteen days for violating Canons 1, 2 A, and 3 A(1) of the Code of Judicial Conduct, as well as the constitutional standard articulated in LSA-Const. art. V, § 25(C). It is further ordered that Justice of the Peace Jamie Frederic-Braud reimburse the Louisiana Judiciary Commission $175.00, which is the amount of costs incurred during the prosecution and investigation of this case.
NOTES
[1] LSA-C.C.P. art. 1313 provides, in pertinent part, that:

C. . . . if a pleading or order sets a court date, then service shall be made by registered or certified mail or as provided in Article 1314.
LSAC.C.P. art. 1314 provides, in pertinent part, that:
A. A pleading which is required to be served, but which may not be served under Article 1313, shall be served by the sheriff by either the following:
(1) Service on the adverse party. . . .
(2)(a) Personal service on the counsel of record. . . .
[2] The record is not clear as to whether the default judgment was rendered in the absence of relevant and competent evidence that established a prima facie case. See, LSA-C.C.P. art. 4921(B). In any event, the formal charge does not include that allegation.
[3] In April 2004, Constable LeBlanc refunded to Ms. Deslatte the sum of $27.58, representing seven certified letter fees of $3.94 each.
[4] CANON 1: A Judge Shall Uphold the Integrity and Independence of the Judiciary

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and shall personally observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code are to be construed and applied to further that objective. As a necessary corollary, the judge must be protected in the exercise of judicial independence.
[5] CANON 2: A Judge Shall Avoid Impropriety and the Appearance of Impropriety in All Activities

A. A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. . . .
[6] CANON 3: A Judge Shall Perform the Duties of Office Impartially and Diligently

The judicial duties of a judge take precedence over all other activities. Judicial duties include all the duties of office prescribed by law. In the performance of these duties, the following standards apply:
A. Adjudicative Responsibilities.
(1) A judge shall be faithful to the law and, maintain professional competence in it. A judge shall be unswayed by partisan interests, public clamor, or fear of criticism.
[7] LSA-C.C.P. art. 225 provides, in pertinent part, that:

A. . . . a person charged with committing a constructive contempt of court may be found guilty thereof and punished therefor only after the trial by the judge of a rule against him to show cause why he should not be adjudged guilty of contempt and punished accordingly.
[8] LSA-C.C.P. Art. 1201 provides, in pertinent part, that:

A. Citation and service thereof are essential in all civil actions. . . . Without them all proceedings are absolutely null.
LSA-C.C.P. art. 4919 provides, in pertinent part, that:
A. The citation must be signed by the justice of the peace. . . .
LSA-C.C.P. art. 4920 provides, in pertinent part, that:
The defendant shall answer within ten days of the service of citation
[9] See, Supreme Court Rule XXIII, § 3(d), which provides that "Closed files of prior proceedings against a judge may be referred to by the Commission at any stage of the current proceedings."

Closed File # 1
On October 1, 2001, Justice of the Peace Braud was issued a letter of caution by the Commission in File No. 00-2201, based upon a complaint that she was frequently absent from and unavailable at her court office, and that she appointed her father as "ad hoc judge" to perform notarial duties. The Commission pointed out to the respondent that she must conduct her duties within the requirements of law, and that she must remain available to members of the public who require justice of the peace services.
Closed File # 2
On March 4, 2004, Justice of the Peace Braud was issued a letter of admonishment by the Commission in File No. 03-3404, based upon a complaint that she became personally involved in a dispute between the complainant and her ex-boyfriend, including storing some disputed property at her own house, and speaking intemperately to the complainant.
Closed File # 3
On August 5, 2004, Justice of the Peace Braud was issued a letter of caution by the Commission in File No. 04-3788, based upon a complaint that during the trial of a dispute between Ms. Kathy Breaux and the owners of a local garbage service, respondent told Ms. Breaux that she had known the defendants for many years, and because she did not know Ms. Breaux, she had the greater burden of persuading her with regard to her position in the suit. The Commission noted that Justice of the Peace Braud's comments suggested she was "not approaching the controversy neutrally and without bias."