CLARK, Justice.
 

 _JjThis matter comes before the Court on the recommendation of the Judiciary Commission of Louisiana (“Commission”) that Judge Reginald T. Badeaux, III (“Judge Badeaux”) of the 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana, be publicly censured and ordered to reimburse the Commission for costs incurred in the investigation and prosecution of this case. For the reasons that follow, we order Judge Badeaux to be publicly censured and ordered to reimburse and pay to the Commission $1,439.15 in costs.
 

 FACTS AND PROCEDURAL HISTORY
 

 On May 4, 2006, Mary Sinclair filed a petition in the 22nd Judicial District Court seeking a divorce from her husband, Cayman Sinclair.
 
 [1]
 
 The petition also sought joint custody of the couple’s minor son, Cole. The case was randomly allotted to Judge Badeaux, who was a close, personal friend of both Mary and Cayman Sinclair.
 
 [2]
 
 Nevertheless, Judge Badeaux did not re-cuse himself from hearing the Sinclair case. Moreover, during the sixteen months Judge Badeaux presided over the Sinclair case, he continued to socialize with
 
 *1274
 
 Mr. Sinclair and conversed with him by-telephone.
 

 The record shows that during Easter 2007, Judge Badeaux, Mr. Sinclair, and his son, Cole, were weekend guests of Mr. Sinclair’s sister and her husband at their home |⅞⅛ Gulf Shores, Alabama. Judge Badeaux’s activities during that weekend included accompanying Mr. Sinclair while he drove Cole to visit with his mother at a meeting point near Destín, Florida, where Ms. Sinclair was then living. In July 2007, Judge Badeaux and his girlfriend took a three-day trip to Sandestin, Florida with Mr. Sinclair and his girlfriend.
 
 [3]
 
 During the trip, Judge Badeaux and Mr. Sinclair discussed Ms. Sinclair’s intention to move Cole to Destín and enroll him in school there. Further, during the return drive, Judge Badeaux agreed to Mr. Sinclair’s request to pick up Cole in Florida, where he had been visiting his mother.
 

 In the late summer of 2007, Ms. Sinclair reminded Mr. Sinclair that she preferred to enroll Cole in school in Destín. Until this point in time, Mr. Sinclair and Ms. Sinclair had informally and amicably shared custody of Cole; however, Mr. Sinclair began to worry that if his son attended school and lived in Florida for six months, his ex-wife could try to initiate formal custody proceedings there and he could be disadvantaged. Consequently, on August 14, 2007, Mr. Sinclair brought to Judge Badeaux’s chambers a
 
 pro se
 
 Rule to Establish Interim Physical Custody and Visitation and For Emergency Order. Judge Badeaux’s law clerk contacted Judge Badeaux by phone and advised him that Mr. Sinclair was seeking to have an order signed. Judge Badeaux first told his clerk to instruct Mr. Sinclair to take the order to another judge but was informed that Mr. Sinclair had already been to other judges’ offices and none were available. Pursuant to Judge Badeaux’s instructions, the law clerk then brought Mr. Sinclair to Judge Badeaux’s car at the south entrance of the Covington courthouse, where Judge Badeaux was waiting. After reviewing the pleading and listening to the
 
 ex parte
 
 representations made by Mr. Sinclair, Judge Badeaux recognized that the custody, domicile, and related issues had become highly contentious and hotly ^contested. Nevertheless, instead of immediately recusing himself, Judge Ba-deaux signed an order proposed by Mr. Sinclair, which required Cole’s immediate return to the State of Louisiana and granted interim physical custody to Mr. Sinclair.
 

 Notably, the order was clearly contrary to law, particularly La.Code Civ.P. art. 3945,
 
 [4]
 
 in that it lacked verification or a
 
 *1275
 
 supporting affidavit that immediate irreparable injury would result to the child before the adverse party could be heard; failed to certify efforts made to give Ms. Sinclair reasonable notice that the order 'was being presented to the court; failed to provide for temporary visitation by Ms. Sinclair; and bordered Ms. Sinclair to show cause at a hearing on October 30, 2007 why Mr. Sinclair should not be designated the domiciliary parent of the minor child (this hearing was set more than 30 days after the signing of the
 
 ex parte
 
 order granting Mr. Sinclair temporary custody). In his sworn statement, Judge Ba-deaux admitted that he knew Mr. Sinclair’s petition for interim child custody was not in compliance with La.Code Civ.P. art. 3945, and he testified that what he really thought was warranted in the situation was a temporary restraining order. Judge Badeaux said that he nevertheless signed the deficient order because his pen was not working sufficiently for him to strike out some of the language in the pleading as presented.
 

 Ms. Sinclair learned of the order on August 19, 2007, the day before Cole was scheduled to start school in Destín. On that date, Judge Badeaux had invited Mr. Sinclair and Cole to swim at his parents’ home. Mr. Sinclair telephoned Ms. Sinclair during the swimming party and informed her of the order signed by Judge Badeaux, and he told her that he intended to keep Cole in Louisiana instead of returning him to Destín to start school. Judge Badeaux has admitted that he was “shocked” and “dismayed” that Mr. Sinclair chose that time and place to call Ms. Sinclair, who was very upset by the conversation; nevertheless, Judge Badeaux continued to fail to self-recuse from the Sinclair case.
 

 For the next month, on the advice of his new counsel, Mr. Sinclair used the
 
 ex parte
 
 order granting him interim physical custody and the fact that a hearing was not set until October 30, 2007 to refuse to permit Ms. Sinclair to see Cole. Ms. Sinclair then filed a Motion for New Trial, alleging inappropriate and biased actions by Judge Badeaux. On September 6, 2007, Judge Badeaux signed an order of recusal in
 
 Sinclair v. Sinclair.
 
 On September 14, 2007, Judge William Burris of the 22nd Judicial District court, vacated Judge Badeaux’s August 14, 2007 order because it lacked verification |fiand did not otherwise comply with the Code of Civil Procedure.
 

 On September 10, 2007, Ms. Sinclair filed a complaint with the Office of Special Counsel (“OSC”) against Judge Badeaux. On June 28, 2010, the Commission filed a Formal Charge alleging Judge Badeaux engaged in judicial misconduct by failing to recuse himself in the
 
 Sinclair
 
 case, by engaging in impermissible
 
 ex parte
 
 communications, and by issuing an order contrary to clearly established law, including, but not limited to, the requirements of La.Code Civ.P. art. 3945. The Commission alleged that Judge Badeaux’s conduct violated Canons 1 (a judge shall uphold the integrity and independence of the judiciary), 2A (a judge shall respect and comply with the law), 3A(1) (a judge shall be faith
 
 *1276
 
 ful to the law and maintain professional competence in it), 3A(4) (a judge shall perform judicial duties without bias or prejudice), 3A(6) (a judge shall not permit private or
 
 ex parte
 
 interviews, arguments or communications designed to influence his judicial action in any case), and 3C (a judge should disqualify himself in a proceeding in which the judge’s impartiality might reasonably be questioned) of the Code of Judicial Conduct. The Commission further alleged that Judge Badeaux engaged in willful misconduct relating to his official duty and persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, in violation of La. Const, art. V, § 25(C).
 

 Joint Stipulations
 

 A hearing officer was appointed to conduct proceedings pursuant to Supreme Court Rule XXIII, § 29; however, prior to a hearing, the parties entered into an extensive stipulation of facts and a partial stipulation of ethical rules violated.
 
 [5]
 
 The | (¡parties also offered a proposed joint stipulation that Judge Badeaux would be censured if his case were eventually referred to this court.
 
 [6]
 
 The Commission agreed to dispense with convening a hearing and to accept the stipulated facts and law.
 

 The Commission invited Judge Badeaux to appear before the members, which occurred on December 3, 2010. During his appearance, Judge Badeaux expressed remorse for not self-recusing immediately upon being assigned the
 
 Sinclair
 
 case.' He explained that he did not recuse because he believed his close, personal relationship with the Sinclairs afforded him “a unique opportunity” to “be of assistance to them in resolving any of the issues they might have.” Judge Badeaux also viewed the matter as amicable because the Sinclairs were “getting along well” and “sharing custody with no difficulties whatsoever.” Further, Judge Badeaux acknowledged his error in signing the
 
 ex parte
 
 order of physical custody in favor of Mr. Sinclair, stating that was “a bad judgment made only in haste, with no malice towards anyone and only towards what I thought was in the best interest of the minor child.”
 
 [7]
 
 Judge Badeaux assured the Commissioners that a similar situation will not recur in the future:
 

 ... Not a day goes by that I don’t contemplate the harm I’ve caused to Mrs. Sinclair and Mr. Sinclair, the loss of our friendship. I’ve learned from it. I hope it will make me a better judge. Certainly [I am] much more sensitive to issues of recusal.... I would like to
 
 *1277
 
 assure the Members of the Commission that that mistake will never happen again. If presented with a similar scenario, I will recuse myself from the beginning.
 

 Following the December proceedings, the Commission filed its recommendation |7in this court on January 28, 2011.
 

 Recommendation of the Commission
 

 (Conclusions of Fact and Law)
 

 In his sworn statement Judge Badeaux testified that he realized Mr. Sinclair’s petition for interim child custody was not in compliance with La.Code Civ. P. art. 3945, and what he really thought was warranted was a temporary restraining order. He said that he signed the deficient order while sitting in his car because his pen was not working sufficiently for him to strike out some of the language in the pleading as presented. He noted that he was also confused because he thought he was considering a verification. He maintained he felt there was urgency to keep Cole out of Florida courts and so he signed an order based upon a woefully defective pleading. Knowingly proceeding in the face of these realities compounds his admitted violations of Canons 2A and SA(1) of the Code of Judicial Conduct.
 

 Judge Badeaux’s explanation in his sworn statement that his motive for granting interim physical custody of Cole to his father was to prevent any proceedings from being filed in Florida demonstrates that he had a personal interest in the case that was inconsistent with a judge’s necessary role as a neutral arbiter. Such a personal feeling about this hypothetical development further demonstrated that Judge Badeaux violated Canon 3C by his failure to remain impartial.
 

 As a district court judge who had served for almost ten years, Judge Badeaux was unexpectedly naive to think Canon 3C did not require his recusal when two friends who were opposing parties in a domestic dispute were assigned by random allotment to present their case to him. He should have been fully aware that issues of divorce and child custody create situations where emotions run high and individuals tend to disagree. It was predictable that the Sinclairs might contest any one or more issues as [Rthey dissolved their marriage. No judge should preside over any case involving close friends, in particular not a divorce and custody case, on the basis that the judge expects things to remain amicable.
 

 Judge Badeaux impressed the Commission as being sincerely sorry for his conduct, as stipulated, and the Commissioners found him credible as he apologized for his actions. The Commissioners are aware, however, that good judges sometimes commit serious violations of ethics rules. When this occurs, especially if the conduct is public, it is necessary for the case to be referred to the court with a recommendation of discipline so that the public, including other members of the judiciary, know and understand when judicial conduct is ethically unacceptable.
 

 DISCUSSION
 

 Because the facts and legal conclusions were stipulated, the sole issue presented is the appropriate measure of discipline.
 
 In re: Shea,
 
 02-0643 (La.4/26/02), 815 So.2d 813. In considering the issue, the Commission looked to the factors set forth by this court in
 
 In re: Chaisson,
 
 549 So.2d 259 (La.1989).
 
 [8]
 
 We adopt the conclusions
 
 *1278
 
 reached by the Commission and find as follows:
 

 (a) and (b) Judge Badeaux’s admitted misconduct occurred in connection with his official duties — in connection with one case assigned to him, where he wrongfully | flfailed to disqualify himself from presiding when he was close personal friends with both parties to a divorce and custody proceeding. While there was only one case, Judge Badeaux retained it in excess of fifteen months. During the first year of the case there were few, if any, occasions for him to exercise his judicial powers, but he continued to socialize with the husband during that period and he engaged in
 
 ex parte
 
 communications with him about child custody. He acted in a judicial capacity based upon at least one
 
 ex parte
 
 communication. Judge Badeaux’s eventual recusal occurred after he took a judicial action that favored the husband and within a week of the time the wife accused him of wrongfully failing to recuse, among other things, both in a court pleading and in her complaint to the Commission;
 

 (c) and (d) Judge Badeaux’s misconduct occurred with respect to his official judicial duties;
 

 (e) Judge Badeaux has acknowledged his wrongful acts. He entered into a full stipulation of facts, and when he appeared before the Commission on December 3, 2010, he acknowledged his wrongdoing and expressed apparently sincere regret; (f) As to whether Judge Badeaux has indicated he will modify his behavior, we adopt the Commission’s belief from his statement to them that he will not repeat the violations of the Code that are evident and admitted in this case;
 

 (g) Judge Badeaux assumed judicial office in January of 1998, and thus he was an experienced judge at the time of his ethical misconduct;
 

 (h) The present case represents the first meritorious complaint lodged against Judge Badeaux;
 

 (i) Judge Badeaux’s misconduct as proven placed the judiciary as a whole in a negative light because those persons with whom Judge Badeaux and the Sinclairs associated and traveled, some of whom were prominent attorneys, witnessed his | mcontinued socializing with Mr. Sinclair during the time the judge was presiding over the
 
 Sinclair
 
 case. Further, court personnel who learned of the manner in which Judge Badeaux signed a legally unauthorized order that deprived a mother of her right to visit her child for at least four weeks and that exposed her to the difficulties and cost of overturning the wrongful ruling potentially lost confidence in the fairness and integrity of the judicial system; and
 

 (j) No evidence was introduced (nor was it alleged) that Judge Badeaux gained any personal advantage as the result of his stipulated misconduct.
 

 We adopt the Commission’s conclusion that although Judge Badeaux’s conduct was “extremely troubling,” he was genuinely contrite and is unlikely to fail to recuse in the future when he faces a case
 
 *1279
 
 involving persons with whom he has a close personal relationship. Accordingly, we will accept the recommendation of the Commission and publicly censure Judge Badeaux, as well as order him to pay the costs of these proceedings.
 

 DECREE
 

 For the reasons assigned, it is ordered that Judge Reginald T. Badeaux, III be publicly censured for violating Canons 2A, 3A(1), 3A(6), and 3C of the Code of Judicial Conduct. Judge Reginald T. Badeaux, III is further ordered to reimburse the Judiciary Commission of Louisiana the sum of $1,439.15 in costs.
 

 [1]
 

 . A divorce was granted on June 22, 2006 pursuant to an uncontested filing based upon living separate and apart for 180 days. Contested issues subsequently arose regarding child custody.
 

 [2]
 

 . Mary and Cayman Sinclair had for a number of years socialized with Judge Badeaux and his wife (now his ex-wife), and the two couples had taken vacations and celebrated birthdays and holidays together.
 

 [3]
 

 . Judge Badeaux paid the costs of the condominium where the group stayed in Sandestin, and drove them to Sandestin and back to Mandeville.
 

 [4]
 

 . Louisiana Code of Civil Procedure Article 3945 provides, in pertinent part:
 

 B. An ex parte order of temporary custody of a minor child shall not be granted unless:
 

 (1) It clearly appears from specific facts shown by a verified petition or by supporting affidavit that immediate and irreparable injury will result to the child before the adverse party or his attorney can be heard in opposition.
 

 (2) The applicant's attorney certifies to the court, in writing, either:
 

 (a) The efforts which have been made to give the adverse party reasonable notice of the date and time such order is being presented to the court.
 

 (b) The reasons supporting his claim that notice should not be required.
 

 C. An ex parte order of temporary custody shall:
 

 (1) Expire by operation of law within thirty days of signing of the order; however, the order may be extended for good cause shown at any time before its expiration for one period not exceeding fifteen days.
 

 (2) Provide specific provisions for temporary visitation by the adverse party of not less than forty eight hours during any fifteen day period, unless the verified petition or supporting affidavit clearly demonstrates
 
 *1275
 
 that immediate and irreparable injury will result to the child as a result of such visitation.
 

 (3) Be endorsed with the date on which the ex parte order is signed and the date and hour of the rule to show cause.
 

 D. The rule to show cause why the respondent should not be awarded the custody, joint custody, or visitation of the child shall be assigned for hearing not more than thirty days after signing of the ex parte order of temporary custody.
 

 E. Any ex parte order not in compliance with the provisions of this Article is not enforceable, and is null and void.
 

 [5]
 

 . The Commission accepted Judge Badeaux's stipulation that he violated Canons 2A, 3A(1), 3A(6), and 3C of the Code of Judicial Conduct. Judge Badeaux did not stipulate that he violated Canons 1 and 3A(4), nor did he agree he violated La. Const. art. V, § 25(C), as charged; however, the Commission was not concerned by this fact, reasoning that "the admitted violations were the critical problems that support a recommendation of discipline in this case.”
 

 [6]
 

 . Judge Badeaux twice requested that the Commission consider entering into a Deferred Recommendation of Discipline Agreement to resolve Ms. Sinclair's complaint. The Commission declined, reasoning that a Deferred Recommendation of Discipline Agreement was not appropriate because some of the judge's admitted violations of the ethics rules were too serious to allow for closure of the case without a recommendation of public discipline. Moreover, the Commission noted that there was some degree of public knowledge about Judge Badeaux's failure to recuse when necessary, and that he was an experienced judge at the time he violated the Code.
 

 [7]
 

 .Judge Badeaux explained that he viewed "the real problem” as the possibility that Ms. Sinclair "might file something down there in Destín," and so "the important thing was to get the ball rolling here in Louisiana and preempt any action in a foreign jurisdiction.”
 

 [8]
 

 . In
 
 Chaisson,
 
 549 So.2d 259, this court, citing
 
 Matter of Deming,
 
 108 Wash.2d 82, 736 P.2d 639, 659 (1987), set forth a non-exclusive list of factors a court may consider in imposing discipline on a judge:
 

 
 *1278
 
 (a) whether the misconduct is an isolated instance or evidenced a pattern of conduct;
 

 (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge’s official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his position to satisfy his personal desires.